



STATE OF CONNECTICUT
EXECUTIVE CHAMBERS

M. JODI RELL
GOVERNOR

July 13, 2005

Mr. Herschel Collins
170 Harold St
Hartford, CT 06112

Dear Mr. Collins:

Thank you for your correspondence to Governor Rell concerning your issues with violations of federal gambling laws in the State of Connecticut. She appreciates the time you took to write your letter.

Governor Rell has asked that I respond to your letter on her behalf. In reviewing your correspondence I realized that your issue concerns a federal matter. Governor Rell has jurisdiction over the Executive Branch of State Government and therefore, Governor Rell suggests you continue to work with your U.S. Congressional members or Representatives regarding this matter.

Thank you once again for your letter to Governor Rell.

Sincerely,

*Carol Annino*

Carol Annino
Staff Assistant
Office of the Governor

05 2142

**FILED**

NOV - 2 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**STATE OF CONNECTICUT**
**OFFICE OF THE CLAIMS COMMISSIONER**

CLAIM NUMBERS: 19907

HERSHEL COLLINS                                    SEPTEMBER 30, 2005

### MEMORANDUM OF DECISION

The claimant, Hershel Collins, alleges that his Equal Protection rights, as guaranteed by the 14th Amendment to the United States Constitution, were violated by the Division of Special Revenue of the State of Connecticut. The claimant alleges that he has attempted to apply for a gaming / gambling license on several occasions and that he has been informed that only Indian Tribes are authorized to obtain such a license. He states that "Despite the state laws prohibiting gambling, the Indian Tribes have been allowed to operate such facilities. The State of Connecticut has not only selectively enforced those laws, but has continually treated the citizens of the state differently than the Indian Tribes." By claim filed December 11, 2003 claimant seeks damages and permission to sue the state. The respondent denies liability.

A formal hearing was held on September 29, 2005 at the Office of the Claims Commissioner. At that hearing the claimant and respondent appeared. The facts are not in dispute and the parties presented oral argument to supplement legal positions presented in Pre-Disposition Memoranda.

C.G.S. § 4-158[1] authorizes the Commissioner to pay just claims. C.G.S. § 4-141[2] defines a "just claim" as a "[c]laim which in equity and justice the state should pay, provided the state has caused damage or injury or has

---

[1] **Sec. 4-158. Jurisdiction of commissioner. Payment of claim. Report to assembly. Waiver of payment on protest to assembly** (a) The claims commissioner may approve immediate payment of just claims not exceeding seven thousand five hundred dollars. The clerk of the Office of the Claims Commissioner shall deliver to the comptroller a certified copy of the claims commissioner's order and the comptroller shall make payment from such appropriation as the general assembly may have made for the payment of claims or, in the case of contractual claims for goods or services furnished or for property leased,

Office of the Claims Commissioner
18-20 Trinity Street, Hartford, CT 06106

received a benefit". While the "equity and justice" standard provides the Commissioner with discretion, that discretion cannot be exercised unless and until the claimant establishes that he was "damaged" by the state.

For authorization to sue the state the Commissioner must deem it to be" just and equitable" and find, in his opinion, that the claim presents an issue of law or fact under which the State, were it a private person, could be liable.

The claimant's basic contention is that he should be allowed to pursue an application to operate a casino or other gambling facility in the State of Connecticut. The respondent correctly argues that certain federally

---

from the appropriation of the agency which received such goods or services or occupied such property. Within five days after the convening of each regular session, the claims commissioner shall report to the general assembly on all claims decided pursuant to this section.

(b) Any person who, having filed a claim for more than [seven] ten thousand [five hundred] dollars, wishes to protest an award of the claims commissioner under the provisions of this section may waive immediate payment and his claim shall be submitted to the general assembly under the provisions of section 4-159. Such waiver shall be in writing and shall be filed with the claims commissioner within ten days after the claimant receives a copy of the order approving payment.

[2] **Sec. 4-141. Definitions.** As used in this chapter: "Claim" means a petition for the payment or refund of money by the state or for permission to sue the state; "just claim" means a claim which in equity and justice the state should pay, provided the state has caused damage or injury or has received a benefit; "person" means any individual, firm, partnership, corporation, limited liability company, association or other group, including political subdivisions of the state; "state agency" includes every department, division, board, office, commission, arm, agency and institution of the state government, whatever its title or function, and "state officers and employees" includes every person elected or appointed to or employed in any office, position or post in the state government, whatever such person's title, classification or function and whether such person serves with or without remuneration or compensation, including judges of probate courts and employees of such courts. In addition to the foregoing, "state officers and employees" includes attorneys appointed as victim compensation commissioners, attorneys appointed by the Public Defenders Services Commission as public defenders, assistant public defenders or deputy assistant public defenders, and attorneys appointed by the court as special assistant public defenders, the Attorney General, the Deputy Attorney General and any associate attorney general or assistant attorney general, any other attorneys employed by any state agency, any commissioner of the Superior Court hearing small claims matters or acting as a fact-finder, arbitrator or magistrate or acting in any other quasi-judicial position, any person appointed to a committee established by law for the purpose of rendering services to the Judicial Department including, but not limited to, the Legal Specialization Screening Committee, the State-Wide Grievance Committee, the Client Security Fund Committee, and the State Bar Examining Committee, any member of a multidisciplinary team established by the Commissioner of Children and Families pursuant to section 17a-106a, and any physicians or psychologists employed by any state agency. "State officers and employees" shall not include any medical or dental intern, resident or fellow of The University of Connecticut when (1) the intern, resident or fellow is assigned to a hospital affiliated with the university through an integrated residency program, and (2) such hospital provides protection against professional liability claims in an amount and manner equivalent to that provided by the hospital to its full-time physician employees.

recognized Indian Tribes are able to operate casinos in Connecticut due to the federal Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701 et seq. Connecticut opposed the operation of casinos in the state [3] and has passed legislation in an effort to prevent additional casinos from being established. [4] The Indian casinos currently operating in the State of Connecticut exist as a result of federal court enforcement of federal law which Connecticut had no choice to obey.

The claimant has not alleged facts that could support a "just claim" finding. Nor has he shown that the state, if it were a private person, could be liable. This claim is dismissed.


STATE OF CONNECTICUT
COMMISSIONER OF CLAIMS

James R. Smith


CC: Robert Vacchelli
AAG


---

[3] Mashantucket Pequot Tribe v. State of Connecticut, 913 F. 2nd 1024 (2nd Cir. 1990) cert. denied 499 U.S. 975 (1991).
[4] 2003 Conn. Public Acts (January 6 Special Session). 03-01.

JAMES R. SMITH
COMMISSIONER



18-20 Trinity Street
Hartford, CT 06106

Telephone (860) 566-2024
Facsimile (860) 566-3406

**STATE OF CONNECTICUT**
Office of Claims Commissioner

Dear Claimant:

Enclosed is the Memorandum of Decision regarding your claim.   Please be
advised of the following:

> *"Your claim will be submitted to the General Assembly at the
> next session (2006) and pursuant to Section 4-159 of the
> General Statutes.  The General Assembly may accept, alter or
> reject the recommendation of the Claims Commissioner."*

Very truly yours,

Nanci Mae Gminski
Chief Clerk

/n

*An Equal Opportunity Employer*

State of Connecticut

Office of the Claims Commissioner

Herschel Collins

    VS                    File Claim # 19907

State of Connecticut

Request of the Transcripts of the Hearing on September 29, 2005

I Herschel Collins request a copy of the audio Transcript of the Hearing with the

Connecticut Attorney General Office on September 29, 2005. I will be responsible for

any cost of reproducing the audio transcript of the hearing before the Claims

Commissioner. I thank you in advance, and attach a copy of the U.S. Attorney General

response to Connecticut Operating Illegal Gambling in Violation of the Federal

Gambling Laws, under the Johnson Act. The Johnson Act covers Gambling in

Washington D.C., U.S. Territory, and Indian Country, The Johnson Act Carrie RICO and

a Felony to anyone having knowledge of a crime and fails to act in there Official

Capacity. Also I attach a copy of President Bush letter authorizing his administration to

give me any assistant in completing my mission in the State of Connecticut. This Office

is in non Compliance of the Johnson Act. The Illegal Gambling being operated in

Connecticut that is now public record will be career ending for anyone who fail to act

upon presentment.



_Herschel Co_

Herschel Collins,

Claimant

35 Jeffery Alan Dr.

Manchester, Ct. 06040

860-995-8131

October 6, 2005



RECEIVED
OCT  6 2005
OFFICE OF CLAIMS COMMISSIONER
STATE OF CONNECTICUT





**U.S. Department of Justice**

Criminal Division

_Washington, DC 20530-0001_

July 26, 2005

Mr. Herschel Collins
170 Harold Street
Hartford, CT  06112-1022

Dear Mr. Collins:

Thank you for your facsimile to the Deputy Attorney General regarding illegal gambling in Connecticut.  I have been asked to respond to you on his behalf to let you know that he appreciates the time you took to share your views with him.  Those of us who are involved in criminal justice and law enforcement benefit greatly from the active involvement of citizens, such as you, who express their thoughts on important issues in these fields.  Accordingly, you may wish to express your views on this matter to your congressional representatives.

Again, the Attorney General appreciates the confidence which prompted you to write him.

Sincerely,

Correspondence Management Staff
Office of Administration

United States District Court
District of Connecticut

DEC 30    3 45 PM '02

U.S. DISTRICT COURT
HARTFORD CONN.

Herschel Collins, Et al

Georgia Jackson

     VS

Ford Motor Credit, Et al

Docket # 301CV2060 (AVC)

## Hold Harmless Agreement

Plaintiff makes this Hold Harmless Agreement in the Interest of Justice, forever holding

the 535 Member of the United States Congress. Harmless of any Acts committed by the

misuse of the Public Act Power of Attorney, Given to Secretary of Interior Babbidge to

approve only the Tribal- State Compacts the meet all the legal requirement of Law. As a

result of the State of Connecticut Defendants, Failing to Plead or Defend the Action of

this Docket. Since this Court has failed to act in a timely manner, and in the interest of

National Security. Plaintiff files this Agreement with the United States District Court, to

File and Seal this Agreement. The Condition of the settlement agreement. (1) In return

for this agreement, plaintiff will receive whistle blowing fees of 40% of the Illegally

Gained profits of the two Indian Casinos, without criminal prosecution being requested.

(2) Plaintiff will also receive a reward for settling this action from the United States

Government, in the form of a Federal Gaming License, which will only carry Federal

Jurisdiction. This Federal Gaming License will be good in Washington, D.C., United

States Territories, and Indian Country. Also as part of this Agreement, the legal action

and false imprisonment of plaintiff Herschel Collins, by the State of Connecticut (from

July 1990 – May 1993), after U.S. District Court Judge Peter C. Dorsey Ruling In 1986

(Docket # H-86-1048(PCD). This will include removal from the records any

Incarceration and Prison Records due to Double Jeopardy of Herschel Collins being tried

for the same offense, by the State of Connecticut. (See Docket # H-86-1048PCD).

Plaintiff without Prejudice Reserves the Right to Modify this Agreement. This

preliminary agreement will allow the 535 members of the U.S. Congress to be able to

function under the Separation of Powers Act. Prior to this Agreement the U.S. Congress

had not been able to do a legal money appropriation Bill for the U.S. Government to

function. The Johnson Act carries a Felony; if you have a felony you cannot hold a seat in

Congress. If you have a felony you cannot do a legal money appropriation Bill, for the

U.S. Government to function. That includes this United States District Court. This

U.S.District Court cannot legally administer the functions of the court, or Issue License to

the Attorneys and Lawyers, to legally practice Law.

Herschel Collins, Prose

Plaintiff

!70 Harold Street

Hartford, Ct. 06112

860-206-0199 / 860-242-9584

December 29, 2002

A COPY OF THE FOLLOWING HAS BEEN SENT TO THE FOLLOWING:

JENNIFER L. COX, ESQ.
PEPE & HAZARD
30 JELLIFF LANE
SOUTHPORT, CT.

EUGENE COONEY, ESQ.
COONEY, SCULLY, & DOWLING
10 COLUMBUS BOULEVARD
HARTFORD, CT. 06106

THOMAS ANDERSON, ESQ.
DANAHER, TEDFORD, LAGNESE
21 OAK ST.
HARTFORD, CT. 06106

PAUL WILLIAMS, ESQ
DAY, BERRY, & HOWARD
CITY PLACE I
HARTFORD, CT. 06103

ERIC DANIELS, ESQ.
ROBINSON & COLE
280 TRUMBULL STREET

MARK HOOVER, ESQ.
2 RIVERVIEW SQUARE
HARTFORD, CT. 06108

JOSEPH MEANY, ESQ.
49 WETHERSFIELD AVE
HARTFORD, CT. 06114

KAREN DOWD, ESQ.
90 GILLETT STREET
HARTFORD, CT. 06105

HERSCHEL COLLINS, PROSE
PLAINTIFF
170 HAROLD STREET
HARTFORD, CT. 06112
860-206-0199 / 860-881-7818

I hereby certify that the foregoing
is a true copy of the original document
on file.     Date: 6/18/65

KEVIN R ROWE
Clerk

HONORABLE J. DENNIS HASTERT
SPEAKER OF HOUSE OF REPRESENTATIVES
UNITED STATES CONGRESS
2369 RAYBURN BUILDING
WASHINGTON, D.C. 20515

RE: OFFICE VISIT JUNE 30, 2005 (HOLDHARMLESS AGREEMENT PRESENTED
TO CONGRESS HOLDING THE 535 MEMBERS OF CONGRESS HARMLESS OF
THE ACTS OF THE STATE OF CONNECTICUT HOODWINKING THE
SECRETARY OF INTERIOR TO USE THE PUBLIC ACT POWER OF ATTORNEY
OF CONGRESS TO APPROVE ILLEGAL INDIAN GAMBLING IN VIOLATION OF
THE JOHNSON ACT.)

DEAR SPEAKER HASTERT;
    I WOULD LIKE TO THANK YOU AND YOUR STAFF FOR BEING SO NICE
TO ME AND LISIENING TO WHAT I HAD TO SAY ABOUT THE DEMOCRATIC
MEMBERS OF CONGRESS WITHHOLDING INFORMATION FROM THE 535
MEMBERS OF CONGRESS. SENATORS DODD, AND LIEBERMAN KNEW THAT
THE AGREEMENT THE GOVERNOR OF CONNECTICUT SIGNED WITH THE
MASHANTUCKET PEQUOT INDIANS WAS ILLEGAL. THIS AGREEMENT WAS
NOT A TRIBAL-STATE COMPACT AND VIOLATED THE JOHNSON ACT. I HAD
BROUGHT THIS TO THERE ATTENTION IN 1996 ALONG WITH CHRIS
DRONEY U.S. ATTORNEY, DEMOCRATE, AND NOW U.S. DISTRICT JUDGE
WHO TRIED TO TOSS OUT MY CASE I FILED THE HOLD HARMLESS
AGREEMENT WITH AFTER THE STATE OF CONNECTICUT FAILED TO
APPEAR IN U.S. DISTRICT COURT AFTER BEING SERVED SUMMONS AND
COMPLAINT APRIL 2002. I FILED FOR DEFAULT PURSUIT TO RULE 55a IN
MAY 2002 JUDGE DRONEY HAVING A CONFLICT OF INTEREST REFUSED TO
ALLOW THE CLERK OF THE COURT TO ISSUE DEFAULT. I NOTIFIED THE U.S.
SUPREME COURT ABOUT U.S. DISTRICT COURT JUDGE CHRIS DRONEY
CONDUCT, AND WAS INFORMED TO FILE A 372c JUDICIAL MISCONDUCT
COMPLAINT WITH THE SECOND CIRCUIT COURT OF APPEALS. THE
DEMOCRATIC SENATORS AND DEMOCRATIC CONGRESSIONAL MEMBERS
FROM CONNECTICUT STOPPED THE SECOND CIRCUIT FROM PROCEEDING
WITH JUDICIAL MISCONDUCT. AFTER SPEAKING WITH EMILY ABOUT THE
HOLDHARMLESS AGREEMENT, AND SHOWING HER HOW I GOT INVOLVED
AND WHAT HAD HAPPENED TO THE 535 MEMBER OF CONGRESS AND NO
MEMBER FROM CONNECTICUT MADE ANY EFFERT TO CORRECT THE
PROBLEM, I CONTACTED PRESIDENT BUSH DURING THE 2000
PRESIDENTIAL CAMPAIGN. I HAVE BEEN IN TOUCH WITH THE U.S.
ATTORNEY GENERAL ABOUT THE CONNECTICUT ATTORNEY GENERAL
OPERATING ILLEGAL GAMBLING ON TWO FEDERALLY RECONIZED INDIAN
RESERVATIONS. I FILED A CLAIM AFTER FILING THE HOLDHARMLESS
AGEEMENT WITH THE CONNECTICUT CLAIMS COMMISSIONER AND THE
CONNECTICUT ATTORNEY GENERAL RESPONDED IN WRITING THAT THE
U.S. GOVERNMENT AND THE INDIAN HAD DAMAGED ME NOT THE STATE

(1)

OF CONNECTITUT. THIS LETTER I LEFT A COPY WITH AMY ADDRESSED TO THE CLAIMS COMMISSIONER, FROM THE CONNECTICUT ATTORNEY GENERAL. THE U.S. ATTORNEY GENERAL STATED THAT NO MATTER WHAT THE CONNECTICUT ATTORNEY GENERAL HAD TO SAY, THEY WERE STILL IN VIOLATION OF THE JOHNSON ACT. THE STATE OF CONNECTICUT WAS OPERATING TWO ILLEGAL INDIAN CASINOS IN A STATE THAT DOES NOT PERMIT THIS KIND OF GAMBLING FOR ANY INDIVIDUAL OR ORGANIZATION. ON FRIDAY PETER STATED TO ME AFTER RECEIVING A COPY OF THE HOLDHARMLESS AGREEMENT FROM ME. THAT IT WAS OK AS FAR AS BEING REGISTERED WITH THE U.S. DISTRICT COURT. IF I NEEDED TO REVISE THE HOLDHARMLESS AGREEMENT, I WAS TO SEE MY CONGRESSMAN JOHN LARSON FROM CONNECTICUT. I SPOKE TO CONGRESSMAN JOHN LARSON LEGISLATIVE DIRECTOR JONATHAN W. RENFREW ON JULY 1, 2005 AND EXPLAINED TO HIM WHAT MESSAGE I RECEIVED FROM THE OFFICE OF THE SPEAKER OF THE HOUSE. I AM TO MEET WITH CONGRESSMAN LARSON CHIEF OF STAFF ON July 6, 2005. I DID EXPLAIN TO CONGRESSMAN LARSON OFFICE THE 535 MEMBERS OF CONGRESS WERE NOT HAPPY WITH THE CONGRESSIONAL DEMOCRATIC MEMBER FROM CONNECTICUT FOR WITHHOLDING THIS INFORMATION FROM THE MEMBER OF CONGRESS, WHO LEGALLY WOULD NOT BE ABLE TO HOLD THERE SEAT IN CONGRESS AND DO A LEGAL MONEY APPROPRIATION BILL FOR THE GOVERNMENT TO FUNCTION. I ALSO EXPLAINED TO CONGRESSMAN LARSON THAT HE AND OTHER DEMOCRATIC MEMBERS OF CONGRESS WILL NOT BE ABLE TO HOLD THERE SEATS IN CONGRESS UNTIL THEY HELP TO COMPLETE WHAT IS IN THE HOLD HARMLESS AGREEMENT, AND NOTIFY THE STATE OF CONNECTICUT HERSCHEL COLLINS BEING LEGALLY ABLE TO OPERATE GAMING IN CONNECTICUT, WITH THE U.S. GOVERNMENT AS A PARTNER. I WOULD LIKE A COPY OF THIS SENT OVER TO SENATOR WILLIAM H. FRIST. I HAVE ONE MORE REQUEST OF THE SPEAKER, WILL YOU FIND OUT FROM THE DEPT OF INTERIOR, INDIAN AFFAIR TRUST HOW MUCH MONEY IN THE ACCOUNTS OF THE MASHANTUCKET PEQUOTS AND MOHEGAN TRIBE. THIS IS IMPORTANT BECAUSE 40% BELONG TO ME AS WHISTLE BLOWING FEES FOR THE HOLDHARMLESS SETTLEMENT AND 40% BELONG TO THE U.S. GOVERNMENT AS TAKE OVER OF THE TWO CASINOS. 20% WILL REMAIN WITH THE TWO TRIBES BECAUSE THEY WERE ALSO VICTIMS OF THE STATE OF CONNECTICUT DISCRIMATOR PRACTICE. AS OF NOW I AM LEGALLY ABLE TO OPERATE GAMBLING IN CONNECTICUT AND ELSE WHERE. THIS MAKES THE MEMORANDUM OF UNDERSTANDING NULL AN VOID. MY REWARD IN THE HOLDHARMLESS AGREEMENT OF A FEDERAL GAMING LICENSE WAS REQUESTED JUST FOR THIS PURPOSE, WHERE WE WILL DO A JOINT VENTURE WITH THE TWO TRIBES TO STAY OPEN AND OPERATE UNDER MY FEDERAL JURISDICTION GAMING LICENSE, AT A FIFTY-FIFTY PARTNERSHIP AGREEMENT. I WILL SHARE MY HALF WITH THE U.S. GOVERNMENT. THIS WILL ALLOW THE U.S. GOVERNMENT TO CREATE NATIONAL GAMING POLICIES AND I WILL ALLOW THE APPROVED

FACILITIES TO OPERATE UNDER MY FEDERAL GAMING LICENSE AFTER U.S.
GOVERNMENT APPROVAL OF ALL OUTSIDE SOURCE APPLICATIONS
SUMMITTED AND APPROVED BY CONGRESS. I HAVE ALSO SET A SIDE 535
MILLION DOLLARS FROM MY WHISTLEBLOWING FEES TO THE MEMBERS
OF CONGRESS WHO HAVE BEEN DAMAGED AS A RESULT OF THE STATE OF
CONNECTICUT ILLEGAL ACTIONS AGAINST THE 535 MEMBERS OF
CONGRESS. I HAVE TO DISCUSS WITH YOU MR. SPEAKER AND THE SENATE
MAJORITY LEADER ON WHO WILL BE IN CHARGE OF THE FUNDS
COLLECTED AND BEING DISPURSED TO THE U.S. GOVERNMENT AND
CONGRESS. WE HAVE TWO INDIAN CASINOS TO USE FOR FUNDING OTHER
PROJECT, SOCIAL SECURITY, MILITARY OPERATION ETC. WE DONOT NEED
TO CLOSE THEM DOWN TAKE THEM OVER AND USE THE MONEY AS
NEEDED.


VERY TRULY,


HERSCHEL L. COLLINS
TEAM LEADER AND FRIEND PRESIDENT BUSH
35 JEFFERY ALAN DR.
MANCHESTER, CT. 06040
860-995-8131/860-997-6901
July 6, 2005

(3)

UNITED STATES DEPARTMENT OF JUSTICE

JAMES COMEY

DEPUTY ATTORNEY GENERAL


RE: CONNECTICUT ATTORNEY GENERAL OPERATING TWO ILLEGAL

INDIAN CASINO IN CONNECTICUT IN VIOLATION OF THE JOHNSON ACT.


HONORABLE JAMES COMEY;

I AM WRITING TO YOU TO INFORM YOU OF OUR DECISION TO GO

FORWARD WITH THE OPERATION OF OUR NON INDIAN CASINOS IN

CONNECTICUT AND ELSE WHERE, THE HOLD HARMLESS AGREEMENT

ALLOWS US TO OPERATE UNDER THE SETTLEMENT AGREEMENT

SUBMITTED TO YOU AND PRESIDENT BUSH. SINCE I HAVE NOT HEARD

ANYTHING FROM THIS OFFICE, OR PRESIDENT BUSH OFFICE TELLING ME

NOT TO GO FORWARD WITH OUR PLAINS. ATTORNEY WESTBROOK AND I

WILL TAKE THIS TO MEAN; OUR HOLD HARMLESS AGREEMENT,

REMOVING FELONIES FROM 535 MEMBERS OF THE U.S. CONGRESS HAS

BEEN ACCEPTED. IN ADDITION, I UNDERSTAND THAT SINCE 2001, WHEN

THE U.S. DISTRICT COURT FAILED TO ISSUE DEFAULT UNDER RULE 55a OF

THE F.R.C.P. WHERE THE CONNECTICUT ATTORNEY FAILED TO APPEAR

AND DEFEND, I HAVE MISSED OUT ON OPERATING A CASINO AND

SHARING THE REVENUE WITH THE U.S. GOVERNMENT. I WOULD LIKE TO

KNOW WHO WILL RECEIVE THE U.S. GOVERNMENT PORTION OF THE

REVENUE I HAVE AGREED TO TURN OVER AS A JOINT VENTURE. I HOPE

THIS FINDS YOU IN THE BEST OF HEALTH, AND FEEL FREE TO CONTACT

ME IF YOU HAVE ANY QUESTIONS ON WHAT DATE WE PLAN TO OPEN OUR

OWN CASINOS

HERSCHEL COLLINS

35 JEFFERY ALAN DR.

MANCHESTER, CT. 06040

860-995-8131 / 860-997-6901

March 9, 2005

CC     GEORGE W. BUSH.

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

FILED

HERSCHEL COLLINS, ET AL.,
    Plaintiffs,

2002 OCT 23 · P 3:46

    v.

Case No. 3:01CV1080(CFD) DISTRICT COURT
HARTFORD CT

FORD MOTOR CREDIT CO.,
ET AL.,
    Defendants.

## ORDER

The defendants "Richard Blumenthal," "All Assistant Attorney Generals, " "State of Connecticut Judicial Branch,""Connecticut Support Enforcement Division," "Family Relation Court Connecticut," and "Judge Simon Bernstein," are hereby ordered to show cause why the plaintiff's renewed motion for default [Doc. #130] should not be granted.

SO ORDERED this **23nd** day of October 2002, at Hartford, Connecticut.

**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**

A TRUE COPY
Roseann B. MacKechnie, CLERK

By Stanley a. Nader
DEPUTY CLERK

1

LEGAL NOTICE BEING SERVED ON THE STATE OF CONNECTICUT

FINAL SETTLEMENT OF HOLDHARMLESS AGREEMENT BETWEEN THE

UNITED STATES GOVERNMENT AND HERSCHEL COLLINS EFFECTIVE

DATE JUNE 30, 2005 IN WASHINGTON, D.C.  WITH THE 109TH CONGRESS

---

THIS LEGAL NOTICE ISSUED THIS 8TH DAY OF JULY 2005 WILL SERVE

NOTICE TO ALL INTERESTED PARTIES; A SETTLEMENT AGREEMENT

HAS BEEN ACCEPTED BY THE UNITED STATES CONGRESS. THIS

AGREEMENT IN THE FORM OF A HOLDHARMLESS AGREEMENT WILL

REMOVE THE 535 MEMBERS OF THE UNITED STATES CONGRESS FROM

ANY AND ALL CLAIMS AGAINST THE UNITED STATES GOVERNMENT

FOR THE HOODWINKING OF THE SECRETARY OF INTERIOR ILLEGAL

USE OF THE PUBLIC ACT POWER OF ATTORNEY, TO APPROVE LEGAL

INDIAN GAMING IN A STATE WHERE THIS TYPE OF GAMBLING IS

LEGAL FOR ANY INDIVIDUAL OR ORGANIZATION, AND ALREADY ON

GOING.  THE ABOVE CAME ABOUT AS A RESULT OF TWO INDIAN TRIBE

OPERATING ILLEGAL CASINO GAMBLING IN THE STATE OF

CONNECTICUT IN VIOLATION OF THE JOHNSON ACT.  THE STATE OF

CONNECTICUT VIOLATED FEDERAL GAMBLING LAWS BY ILLEGALLY

ALLOWING THE MASHANTUCKET PEQUOT INDIANS AND MOHEGAN

INDIANS TO OPERATE CLASS III GAMBLING IN A STATE WHERE THIS

TYPE OF GAMBLING IS ILLEGAL FOR THE PEOPLE OF THE STATE. THE

(1)

STATE OF CONNECTICUT HOODWINKED THE UNITED STATES CONGRESS THROUGH THE SECRETARY OF INTERIOR, TO USE THE PUBLIC ACT POWER OF ATTORNEY GIVEN HIM BY THE UNITED STATES CONGRESS TO APPROVE ONLY THE AGREEMENT THAT MEET THE REQUIREMENT OF INDIAN GAMING REGULATOR ACT, PERMITTED IN THE JOHNSON ACT. THE CONNECTICUT ATTORNEY GENERAL ALLOWED THE GOVERNOR TO SIGN A MEMORANDUM OF UNDERSTANDING WITH THE MASHANTUCKET PEQUOT INDIANS AND MOHEGAN INDIANS VIOLATING THE 14TH AMENDMENT EQUAL PROTECTION OF THE UNITED STATES CONSTITUTION. THE STATE OF CONNECTICUT RECEIVED 25% OF THE GROSS REVENUE AND THE 535 MEMBERS OF THE UNITED STATES CONGRESS RECEIVED RICO AND A FELONY. THE UNITED STATES GOVERNMENT FAILED TO OPERATE AS A RESULT OF THE STATE OF CONNECTICUT ATTORNEY GENERAL NOTIFYING THE UNITED STATES GOVERNMENT CLASS III GAMBLING WAS ILLEGAL IN THE STATE. THE UNITED STATES GOVERNMENT HAS NOT BEEN ABLE TO EFFECTIVELY DO A LEGAL MONEY APPROPRIATION BILL FOR THE UNITED STATES GOVERNMENT TO FUNCTION UNTIL THIS AGREEMENT WAS COMPLETED. THE TERMS OF THE HOLDHARMLESS ARE AS FOLLOWS. (1) THE HOLDHARMLESS AGREEMENT WILL HOLD THE 535 MEMBERS OF CONGRESS HARMLESS OF THE MISUSE OF THE PUBLIC ACT POWER OF ATTORNEY, SIGNED AND FILED WITH THE UNITED STATES CONGRESS. (2) IN RETURN FOR

(2)

THE HOLDHARMLESS SETTLEMENT AGREEMENT, HERSCHEL COLLINS WILL RECEIVE WHISTLE BLOWING FEES OF 40% FROM THE ILLEGAL PROFITS MADE BY THE TWO ILLEGAL INDIAN CASINOS OPERATING IN THE STATE OF CONNECTICUT. (3) HERSCHEL COLLINS WILL RECEIVE A REWARD FOR SETTLING THIS HOLDHARMLESS AGREEMENT IN THE FORM OF A FEDERAL GAMING LICENSE. THIS FEDERAL GAMING LICENSE WILL ONLY HAVE FEDERAL JURISDICTION, AND WILL BE GOOD IN WASHINGTON, D.C., U.S. TERRITORY, AND INDIAN COUNTRY. AS A RESULT OF THE STATE OF CONNECTICUT CHARGING THE TWO INDIAN TRIBES MORE THAN THE NORMAL DAY TO DAY COST OF DOING BUSINESS, IT WILL NOT BE PROTECTED UNDER THIS HOLDHARMLESS AGREEMENT, AND SUBJECT TO POSSIBLE CRIMINAL ACTIONS AND REPAYMENT OF BILLIONS OF DOLLARS.  IF THIS AGREEMENT IS NOT HONORED BY THE STATE OF CONNECTICUT, ALL STATE OFFICIALS WILL BE SUBJECT TO CRIMINAL PROSECUTION FOR OPERATING ILLEGAL GAMBLING IN VIOLATION OF THE JOHSON ACT. NOTICE IS GIVEN ACCORDING TO THE MEMORANDUM OF UNDERSTANDING TO THE STATE OF CONNECTICUT; HERSCHEL COLLINS IS NOW LEGAL AND ABLE TO OPERATE CLASS III CASINO GAMBLING IN CONNECTICUT UNDER FEDERAL JURISDICTION WITHOUT STATE OF CONNECTICUT INTERFERENCE. THE MEMORANDUM OF UNDERSTANDING AGREEMENTS, BETWEEN THE STATE OF CONNECTICUT, MASHANTUCKET PEQUOTS,  THIS 13TH DAY

(3)

OF JANUARY, 1993 TO SET FORTH CERTAIN MATTERS REGARDING IMPLEMENTATION OF THE FINAL MASHANTUCKET PEQUOT GAMING PROCEDURES, AND MOHEGAN TRIBE HAS EXPIRED UNDER THE MEMORANDUM OF UNDERSTANDING AGREEMENT. THE AGREEMENT WHICH STATES THE TRIBE AGREES THAT SO LONG AS NO CHANGE IN STATE LAW IS ENACTED TO PERMIT THE OPERATION OF VIDEO FACSIMILES BY ANY OTHER PERSON AND NO OTHER PERSON WITHIN THE STATE LAWFULLY OPERATE VIDEO FACSIMILES CLASS III GAMBLING IN THE STATE OF CONNECTICUT, THE TRIBE AGREES TO GIVE THE STATE OF CONNECTICUT 25% OF THE GROSS REVENUE. THE TRIBE CANNOT OPERATE IN THE STATE OF CONNECTICUT ACCEPT THIS AGREEMENT WHICH HAS BEEN DECLARED IN VIOLATION OF THE JOHNSON ACT BY THE UNITED STATES ATTORNEY GENERAL. HERSCHEL COLLINS AGAIN SERVE NOTICE TO THE STATE OF CONNECTICUT I HAVE THE LEGAL RIGHT TO OPERATE CLASS III CASINO GAMBLING IN THE STATE OF CONNECTICUT AND ANY WHERE ELSE, PURSUIT TO THE HOLDHARMLESS AGREEMENT REGISTER WITH THE UNITED STATES COURTS AND THE UNITED STATES CONGRESS. THE SPEAKER OF THE HOUSE HAS DIRECTED CONGRESSMAN JOHN LARSON TO ASSIST HERSCHEL COLLINS IN NOTIFICATION OF THE STATE OF CONNECTICUT, OF HIS LEGAL RIGHT TO OPERATE CLASS III CASINO GAMBLING. IS THERE ANY PART OF THIS HOLDHARMLESS AGREEMENT YOU DONOT UNDERSTAND.

(40)



**HERSCHEL COLLINS, CLAIMANT # 19907**

**CONNECTICUT CLAIMS COMMISSION FILE**

**35 JEFFERY ALAN DR.**

**MANCHESTER, CT. 06040**

**860-995-8131**

**July 8, 2005**

(5)

## "THE TRIBE OF WE "

WE THE PEOPLE, HAVE COME TOGETHER TO CREATE A MORE PERFECT

UNION. SERVE NOTICE ON THE REPRESENTATIVES WHO CALL

THEMSELVE LAW MAKERS, WHO HAVE ACTED OUTSIDE THERE, JOB

DISCRIPTION, GIVING THE PEOPLES POWER OF ATTORNEY TO

INCOMPENTENT REPRESENTATIVES. WHO NEARLY DESTROYED THE

UNION OF THE UNITED STATES, COME FOURTH WITH THIS

HOLDHARMLESS AGREEMENT TO FOREVER CLOSE THIS CHAPTER IN

AMERICAN HISTORY BY SUMMITTING THE FOLLOWING. 1) THIS

HOLDHARMLESS AGREEMENT WILL CREATE A NATIONAL GAMING

EMPIRE THAT WILL CREATE JOBS, OPPORTUNITY FOR THE TRIBE KNOWN

AS WE THE PEOPLE (350,000.000 AMERICANS) IN AND AROUND 100 MILE

RADIUS OF ANY FUTURE FAMILY RESORT AND CASINOS WHERE

HERSCHEL COLLINS AND THE U.S. GOVERNMENT WILL OPERATE JOINTLY.

THE ILLEGALLY GAINED PROFITS OF THE TWO INDIAN CASINOS

BELONGING TO THE MASHANTUCKET PEQUOTS AND THE MOHEGAN TRIBE

OF CONNECTICUT WILL BE FORFITTED TO HERSCHEL COLLINS AND THE

U.S. GOVERNMENT. 40% WILL GO TO HERSCHEL COLLINS AS

WHISTLEBLOWING FEES, PER HOLDHARMLESS AGREEMENT, INSTEAD OF

CLOSING THE TWO INDIAN CASINOS. THE U.S. GOVERNMENT WILL TAKE

CONTROL OF THE TWO CASINOS BELONGING TO THE MASHANTUCKET

PEQUOTS AND MOHEGAN TRIBE OF INDIANS IN CONNECTICUT. THE

CASINOS WILL BE ALLOWED TO OPERATE UNDER HERSCHEL COLLINS

(1)

NEW FEDERAL GAMING LICENSE, PER HOLDHARMLESS AGREEMENT, AS

HIS REWARD FOR SAVING THE UNION. 20% OF THE REMANING ILLEGAL

PROFITS GAINED FROM THE ILLEGAL CASINOS OF THE MASHANTUCKET

PEQUOTS AND MOHEGAN INDIANS WILL REMAIN WITH THE TRIBES

PROVIDING THE TRIBES CONTINUE TO OPERATE UNDER HERSCHEL

COLLINS LICENSE AND U.S. GOVERNMENT JURISDICTION. THE UNITED

STATES GOVERNMENT WILL PROVIDE TO HERSCHEL COLLINS PER

HOLDHARMLESS AGREEMENT, ALL ANNUAL FINANCIAL RECORDS AND

BANK ACCOUNT AND NUMBERS OF ALL FUNDS MADE WHILE OPERATING

ILLEGAL GAMBLING IN THE STATE OF CONNECTICUT. TO DATE THE

MASHANTUCKET PEQUOTS HAVE STATED PUBLICLY, THEY HAVE MADE $

86 BILLION DOLLARS IN SLOT MACHINES AS OF 2002. 40% OF THIS IS

ABOUT $34 BILLION DOLLARS FOR HERSCHEL COLLINS AND $34 BILLION

DOLLARS FOR THE U.S. GOVERNMENT. THIS DOES NOT INCLUDE TABLE

GAMES, BEVERAGES, HOTEL, PARKING, ETC. WE HAVE NOT STARTED TO

COUNT THE MOHEGAN TRIBES ILLEGAL GAMING FUNDS AND THE $2

BILLION DOLLAR HOTEL CASINO RESENTLY BUILT. I HAVE A PLAN TO

CREATE A NATIONAL GAMING OPERATION UNDER FEDERAL

JURISDICTION, WITH FAMILY RESORTS AND CASINOS. THESE FACILITIES

CAN ALSO BE OPERATED AT MILITARY BASE WHERE THE U.S.

GOVERNMENT KEEPS 50% OF THE PROFIT. COMMERCE AND TRADE WILL

BE AFFECTED WITHIN A HUNDRED MILE RADIUS, 50,000 NEW JOBS

CREATED IMMEDIATELY. EACH FACILITY WILL BE SELF SUPPORTIVE

WHERE YOU HAVE FUNDS, TO ELIMATE BASE CLOSING, CASH FLOW FOR

SPECIAL PROJECTS LIKE SOCIAL SECURITY. THE IMAGINATIONS IS

UNLIMITED, IF THIS IS DONE RIGHT AND THE PLAN IS NOT ALTERED, IT

WILL WORK FOR EVER. YOU GET TO TRANSFORM UNUSED AREAS INTO

CASH FLOWS, EXAMPLE FLORIDA HAS HAD SO MANY DISTRUCTIVE

STORMS, AND YOU CAN TRANSFORM THE EAST COAST AND FLORIDA INTO

CASINO RESORTS FOR THE ELDERLY, WHERE THERE RETIREMENT CAN

GIVE THOSE JOBS, AND INVESTMENT OPPORTUNITYS. THE U.S.

TRANSPORTATION SYSTEM (AIR, RAIL, BUS, AND BOATS) CAN PAY FOR

NEEDED SECURITY AND EQUIPMENT WITH SLOT MACHINES AVAILABLE

FOR THE TRAVELER. FAMILY RESORTS FOR THE VACATIONER ON THE

EAST COAST, THE ENTIRE VACATIONER ON THE EAST COAST, ALL UNDER

FEDERAL JURISDICTION, WORKING UNDER THE LICENSE OF HERSCHEL

COLLINS, RECEIVED AS A REWARD. 3) I HERSCHEL COLLINS NEED THREE

BANK ACCOUNTS SET UP, ONE FOR HERSCHEL COLLINS, ONE FOR THE U.S.

GOVERNMENT TO RECEIVE THE WHISTLE BLOWING FEES, DUE HERSCHEL

COLLINS. 40% WILL GO TO HERSCHEL COLLINS, AND 40% WILL GO TO THE

U.S. GOVERNMENT. ONE ACCOUNT WILL BE FOR THE DONATION OF $535

MILLION DOLLARS, FOR THE 535 MEMBERS OF CONGRESS THAT WERE

DAMAGED. IMMEDIATE DEPOSIT TO Herschel Collins ACCOUNT OF $

25,000,000 DOLLARS TO SET UP NETWORK WHICH INCLUDE IMMEDIATE

ACCESS TO MILITARY BASES THAT MAY CLOSE. I NEED TO KNOW WHO

WILL BE RESPONSIBLE FOR ANY OF THE ABOVE ITEMS I MAY WISH TO

( 3 )

ADDRESS. I WOULD LIKE MY OWN LEGAL TEAM, AND FINANCIAL

ADVISERS ETC, SUPPLIED BY THE U.S. GOVERNMENT. THE WHISTLE

BLOWING FEES, I WILL USE TO OPERATE AND BUILD THE FAMILY RESORTS

AND CASINOS, WITH EVERY COOPERATION ECONOMICALLY, THE U.S.

GOVERNMENT AND THE TRIBE CALLED "WE "CAN PROSPER AND REBUILD

AMERICA. ONE MORE IMPORTANT THING IN THE HOLDHARMLESS

AGREEMENT, THE CLEANING UP OF MY ILLEGAL JAIL HISTORY BY JOSEPH

LIEBERMAN FORMER CONNECTICUT ATTORNEY GENERAL.JOSEPH

LIEBERMAN ALLOWED STATE DEFENDANTS IN FEDERAL COURT, TO HAVE

ME IMPRISONED FOR FIVE YEARS, IN STATE OF CONNECICUT PRISON FOR

MISDERMEANER CHARGES, A FEDERAL JUDGE SAID HERSCHEL COLLINS

HAVE NO INVOLVEMENT. I KNOW THIS WILL TAKE TIME TO DEPOSIT THE

FUNDS OF THE MASHANTUCKET PEQUOTS AND MOHEGAN TRIBES, THAT

IS WHY I NEED THE $ 25,000,000 DOLLARS DEPOSITED TO MY ACCOUNT

IMMEDIATELY TO START OPERATION.


HERSCHEL COLLINS

35 JEFFERY ALAN DR.

MANCHESTER, CT.  06040

860-995-8131

August 4, 2005

(4)



RICHARD BLUMENTHAL
ATTORNEY GENERAL

MacKenzie Hall
110 Sherman Street
Hartford, CT 06105-22:

### Office of The Attorney General
## State of Connecticut

*Tel. No. (860) 808-5450*
*Fax No. (860) 808-5591*

May 10, 2004

Honorable James R. Smith
Claims Commissioner
18-20 Trinity Street
Hartford, CT 06106

**Re:    Claim of Hershel Collins**
      **File No. 19907**

Dear Commissioner Smith:

    This matter is a claim by Hershel Collins complaining that on several occasions commencing in 1999 and as recently as in 2003, he attempted to apply for a "gaming/gambling license", presumably for a casino, with the Division of Special Revenue. He alleges that on each occasion he was informed that only Indian Tribes were authorized to obtain such a license. Claim, p. 2. He alleges a violation of his Equal Protection rights protected by the United States Constitution, and seeks permission to sue the State for over $100,000. We urge the Commissioner to deny the claim.

    Officials at the Division of Special Revenue do recall Mr. Collins making telephone calls to the agency for the purposes of applying for a casino license. No written communications were located. Nevertheless, in those telephone calls, agency officials explained to Mr. Collins that the State does not issue casino licenses, and that the two Indian Tribes that own and operate casinos in the state do so pursuant to federal procedures or a Tribal/State Compact derived from federal law under which only certain federally recognized Indian Tribes are eligible.

    We urge the Commissioner to deny the claim because:

    1.    The State does not issue casino licenses. Certain federally recognized Indian Tribes are able to operate casinos in Connecticut due to the federal Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701 et seq. Connecticut did not promulgate that law. Connecticut did not allow casinos in Connecticut, and it opposed the federal allowance of Indian casinos in the state under IGRA, exhausting every legal remedy available, including an effort to have federal orders reversed in the United States Supreme Court, but to no avail. See Mashantucket Pequot Tribe v. State of Connecticut, 913 F.3d 1024 (2nd Cir. 1990) cert. denied 499 U.S. 975 (1991). Connecticut has passed legislation in an effort to prevent any more casinos by eliminating

Honorable James R. Smith
May 10, 2004
Page 2

charitable Las Vegas Nights, because that gambling measure had been found to be the key to allowing full-scale Indian casinos under IGRA. 2003 Conn. Pub. Acts (January 6 Spec. Sess.) 03-01; 2003 Conn. Op. Atty. Gen. No. 03-11 (Letter to Executive Director Susan Townsley, June 10, 2003). In sum, the State does not allow or condone casinos in Connecticut. Their existence is the result of federal court enforcement of federal law which Connecticut had no choice but to obey. Following the Mashantucket Pequot Tribe case, the federal government imposed procedures allowing casino gambling by the Mashantucket Pequot Tribe in Connecticut. See, 56 Fed. Reg. 24996 (May 31, 1991); 1993 Conn. Op. Atty. Gen. No. 93-4 (Letter to Rep. Thomas Ritter, February 11, 1993). Later, the State had no choice but to follow settled federal law and, so, it acquiesced in a Tribal/State Compact with the Mohegan Tribe which had also exercised its IGRA rights to negotiate for a casino in Connecticut. See, generally, 1994 Conn. Op. Atty. Gen. No. 94-10 (Letter to Sen. John Larson, May 18, 1994). Thus, if claimant is being treated differently from federally recognized Indian Tribes, it is a result of federal government action, not state. Thus, Connecticut has not caused claimant's alleged injury. Claimant must prove the state cause him injury or damage in order to establish a "just claim" meriting favorable action on his petition. Conn. Gen. Stat.§ 4-141. This element is lacking in the present case.

2.    Claimant's argument that his Equal Protection rights are being violated under the gambling laws which allow only federally recognized Indian Tribes to have casinos was recently resolved to the contrary in Artichoke Joe's v. Norton, 353 F.3d 712 (9th Cir. 2003). In that case, plaintiffs California card clubs and charities that were prohibited from offering casino-style gambling challenged the IGRA alleging violation of their Equal Protection rights. The Court of Appeals for the Ninth Circuit found that federal regulation governing Indian Tribes involve a political classification subject to a rational basis equal protection test. Artichoke's Joe's, supra at 735 citing Morton v. Mancari, 417 U.S. 535, 94 S. Ct. 2474, 41 L.Ed.2d 296 (1974). It further found a rational basis for IGRA, concluding as follows:

> IGRA is rationally related to Congress' stated purposes of encouraging tribal autonomy and economic development. We recognized, in *Alaska Chapter, 694 F.2d at 1170*, that the furtherance of "an economic community" on Indian lands was a goal related to Congress' special trust obligations. IGRA and the Tribal-State Compacts further that goal by authorizing gaming. Congress recognized that the revenue generated from pre-IGRA tribal gaming operations "often means the difference between an adequate governmental program and a skeletal program that is totally dependent on Federal funding." S. Rep. No. 100-446, at 3, reprinted at 3072. Thus, IGRA and the Tribal-State Compacts also are rationally related to the federal government's interest in fostering tribal self-government.

Artichoke Joe's v. Norton, supra at 736.

Honorable James R. Smith
May 10, 2004
Page 3

The Ninth Circuit's decision presents a persuasive paradigm for resolution of the issue in this forum. Equal Protection arguments like Claimant's have been routinely denied in other jurisdictions for reasons similar to those articulated by the Ninth Circuit Court of Appeals. See, Flynt v. California Gambling Control Commission, 104 Cal. App. 4th 1125, 129 Cal. Rptr.2d 167 (2002), cert. denied 124 S.Ct. 398 (2003); Tworek v. United States, 46 Fed. Cl. 82 (Fed. Cl. 2000); United States v. Williams, 124 F.3d 411, 421-23 (3d Cir. 1997); U.S. v. Burns, 725 F. Supp. 116 (N.D.N.Y. 1989) aff'd sub nom on other grounds United States v. Cook, 922 F.2d 1026 (2nd Cir. 1991); Am. Greyhound Racing, Inc. v. Hull, 146 F.Supp.2d 1012, 1075 (D. Ariz. 2001) rev'd on other grounds 305 F.3d 1015 (9th Cir. 2002); Am. Legion Post No. 49 v. Hughes, 120 N.M. 225, 901 P.2d 186 (1994); Jefferson v. Commissioner of Revenue, 2001 Minn. Tax LEXIS 1 (2000). We urge the Commissioner to rule likewise in this case. Claimant must present "an issue of law or fact under which the state, were it a private person, could be liable." Conn. Gen. Stat. § 4-160. He cannot satisfy this requirement in this case.

Wherefore, we urge the Commissioner to deny the claim.

Very truly yours,

Gregory T. D'Auria
Associate Attorney General

Robert F. Vacchelli
Assistant Attorney General

GTD/RFV/ni

cc:  Dawne Westbrook, Esq.
P.O. Box 2502
Middletown, CT 06457

FILED IN THE
U.S. DISTRICT COURT
ERN DISTRICT OF WASHINGTON

DEC 10 1998

JAMES R. LARSEN, CLERK
_____ DEPUTY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

      Plaintiff,

    vs.

1020 ELECTRONIC GAMBLING
MACHINES,

      Defendant.

NO. CS-98-265-FVS

ORDER GRANTING
FORFEITURE

THIS MATTER came before the Court based upon cross motions
for summary judgment. The United States was represented by
Assistant United States Attorneys James R. Shively and Thomas
O. Rice. The Spokane Tribe of Indians was represented by Scott
D. Crowell and David R. Lundgren.

I.

The Spokane Tribe of Indians ("Tribe") is operating 1020
electronic gambling machines on its reservation. The United
States seeks the machines' forfeiture under the Johnson Act, 15
U.S.C. §§ 1171-1178. The Tribe has filed a claim to the
machines, see Rule C(6), Supplemental Rules for Certain
Admiralty and Maritime Claims, 28 U.S.C., and opposes the

ORDER - 1

1    government's request for forfeiture.  The Court has

2    jurisdiction by virtue of 28 U.S.C. §§ 1345 and 1355.

3                              II.

4        The Johnson Act prohibits the possession of gambling

5    devices within Indian country.  15 U.S.C. § 1175(a).[1]  Gambling

6    devices possessed in violation of § 1175(a) are subject to

7    forfeiture.  15 U.S.C. § 1177.  Forfeiture actions brought

8    under the Johnson Act are governed by "customs laws."  Id.

9    Consequently, the parties' burdens in this action are derived

10   from 19 U.S.C. § 1615.  United States v. 129,727.00 U.S.

11   Currency, 129 F.3d 486, 492 (9th Cir.1997), cert. denied, ___

12   U.S. ___, 118 S.Ct. 1399, 140 L.Ed.2d 657 (1998).  Under 19

13   U.S.C. § 1615, the United States must first demonstrate

14   probable cause to believe the defendant machines are being

15   possessed or used in violation of 15 U.S.C. § 1175(a).  See id.

16   If the United States does so, the burden shifts to the Tribe to

17   demonstrate that the machines are not forfeitable.  See id.

18       The Tribe concedes the defendant machines are gambling

19   _____

20   [1]Subsection (a) provides in its entirety:

21   It shall be unlawful to manufacture, recondition,
     repair, sell, transport, possess, or use any gambling
     device in the District of Columbia, in any possession
22   of the United States, within Indian country as defined
     in section 1151 of Title 18 or within the special
23   maritime and territorial jurisdiction of the United
     States as defined in section 7 of Title 18, including
24   on a vessel documented under chapter 121 of Title 46 or
     documented under the laws of a foreign country.
25

ORDER - 2

Indian country.[2]  Consequently, the fact Indian tribes are not

mentioned in § 1175(a) is of no significance.  <u>See</u> <u>Donovan v.</u>

<u>Coeur d'Alene Tribal Farm</u>, 751 F.2d 1113, 1115-16 (9th

Cir.1985).

That conclusion is supported by the text of the Indian

Gaming Regulatory Act ("IGRA"), 25 U.S.C. s 2701 et seq.  IGRA

divides games of chance into three classes.  <u>United States v.</u>

<u>Spokane Tribe of Indians</u>, 139 F.3d 1297, 1299 (9th Cir.1998)

("<u>Spokane Tribe</u>").  The defendant machines are used for Class

III gaming.  As the United States points out, IGRA creates a

conditional exemption for class III gaming:

> The provisions of section 1175 of Title 15 shall not
> apply to any [class III] gaming conducted under a
> Tribal-State compact that --
>      (A) is entered into . . . by a State in which
> gambling devices are legal, and
>      (B) is in effect.

25 U.S.C. § 2710(d)(6).  The fact Congress created a

conditional exception for class III gaming indicates that

Congress intends such gaming and its sponsors to remain subject

to § 1175(a) until the relevant conditions are satisfied.

For the defendant machines to be exempt from § 1175(a),

the Tribe must have a compact with the State of Washington.  25

U.S.C. § 2710(d)(6).  The Tribe freely concedes it does not.

Thus, the defendant machines are subject to § 1175(a).  <u>See</u>

---

[2]Nothing in 15 U.S.C. § 1175(a) limits its application to
individuals.

ORDER - 5

1  Congress may change the law if chooses to do so.  Until it

2  does, the Tribe is violating the Johnson Act by operating 1020

3  electronic gambling machines on its reservation.  This Court is

4  not free to ignore the violation or rewrite federal law.

5

6        **IT IS HEREBY ORDERED:**

7        1.  The government's "Motion for Warrant of Arrest in Rem

8  and Writ of Entry" (Ct. Rec. 2) is granted.

9        2.  The government's motion for summary judgment (Ct. Rec.

10  13) is granted.  The Tribe is to surrender the defendant

11  machines to the United States pursuant to the terms of the

12  stipulation of August 3, 1998.

13        3.  The Tribe's motions to dismiss (Ct. Rec. 19) and to

14  stay (Ct. Rec. 20) are denied.

15        4.  All other pending motions are denied as moot.

16

17        **IT IS SO ORDERED.**  The District Court Executive is hereby

18  directed to enter this Order and furnish copies to counsel.

19  DATED this ___10th___ day of December 1998.

20

21  _____

22              FRED VAN SICKLE
            United States District Judge

23

24

25

ORDER - 13

Honorable Jodi Rell
Governor of Connecticut
State Capitol
Hartford, Connecticut

Re: State of Connecticut continued collection of money from the illegal Indian Casinos,
after being notified of the Hold Harmless Settlement Agreement, between Herschel
Collins and U.S. Government terminating the Memorandum of Understanding.

Dear Governor;
    It has come to my attention, after you were notified on July 11, 2005 about the State of
Connecticut operating illegal Indian Casino gambling and responded back to me on July
13, 2005. Herschel Collins notified you of being legally able to operate Class III Casino
gambling in the State of Connecticut, your response was to continue working with my
congressional member. **I was** <u>informed today; the Governor of Connecticut has not
notified the Mashantucket Pequot's</u> **and Mohegan** Tribe to no longer make Casino
payment to the State of Connecticut. I believe this may be an over site on the State of
Connecticut part, to not except any more payments without the approval of the U.S.
Government. I have notified the U.S. Attorney General and the Speaker of the House of
Representative; about the State of Connecticut continued collection of payments, after
being notified of the Hold Harmless Settlement Agreement, where Herschel Collins is
now legally able to operate Casino gambling in Connecticut, Washington, D.C., U.S.
Territory, and Indian Country. Governor will you please explain why, your
administration is in violation of the Johnson Act? **Governor can you tell the people of
this state how the Connecticut Attorney General can have the Governor of
Connecticut  sign a Memorandum of Understanding, allowing two Indian Tribe to
operate Casino Gambling, in a state where this type of gambling is not legal for the
three million citizen, voters and tax payers of Connecticut. Governor will you notify
me when the Mashantucket Pequot's and Mohegan Tribe have been notified the
State of Connecticut can no longer except casino payments. Herschel Collins will be
collecting for the U.S. Government and needs to be contacted by the two casinos, for
arrangement to continue to operate, because of the memorandum of understanding
being terminated by the Johnson Act violation.**

**Sincerely,**

**Herschel Collins, Team Leader for Pres. Bush**
**35 Jeffery Alan Dr.**
**Manchester, Ct. 06040**
**860-995-8131**
**August 31,2005**

U.S Attorney General Gonzales
U.S. Department of Justice
Washington, D.C.

Re: Hold Harmless Agreement sent to Deputy Attorney General James Comey which has
been accepted by the Speaker of the House and Majority Leader of the Senate Frist.


Dear Attorney General:

My names Herschel Collins, I am a personal friend of President Bush.  I have been
working on a project for sometime, only a few people knew about, John Ashcroft, James
Comey, George W., and me. I have completed my mission except for collecting the
illegal Indian Casinos money for the U.S. Government, along with my whistle Blowing
fees and reward of a Federal Gaming license for saving the Union.  Please read what I
have attached and respond as soon as possible.    Thank you,



Sincerely,



Herschel Collins, Team Leader Pres, Bush
35 Jeffery Alan Dr.
Manchester, Ct. 06040
860-995-8131
August 31, 2005

U.S. Congress
J. Dennis Hastert
Speaker of the house
Washington, D.C.

Re: Illegal Gaming in the State of Connecticut, by Two Federally Recognized Indian tribes (Mashantucket Pequot's and Mohegan Tribe).

Dear Speaker Hastert:

    I am writing to you, after speaking with Congressman Rob Simmons of Connecticut. We have discovered after giving notice to Governor Jodi Rell about the illegal gambling in Connecticut being operate by two federally recognized Indian tribes. **The State of Connecticut continues to collect $ 30 million dollars a month from the two Indian Casinos being illegally operated in Connecticut. The State of Connecticut has received a copy of the Hold Harmless Agreement and knows Herschel Collins can legally operate Class III gaming in Washington, D.C., U.S. Territory, and Indian Country. The last page of the Memorandum of Understanding (not a Tribal-State Compact), as required by the Johnson Act, states on the signature page, the Tribe agrees that so long as no change in State law is enacted to permit the operation of video facsimiles by any other person and no other person within the state lawfully operates video facsimile games, the tribe shall not assert the right to operate such devises except in accordance with this Memorandum of Understanding. In the event that any change in state law is enacted to permit the operation of video facsimiles by any other person or any other person within the state lawfully operates video facsimile games, the Tribe shall not be bound by the provisions of this Memorandum of Understanding so long as it does not claim any right to operate video facsimile games by virtue of this Memorandum of Understanding, but the Tribe may there upon assert any rights which it may other wise have under the Procedure; provided, however, that in such event neither party be bound by any of the provisions here of nor shall either party be barred from taking any position inconsistent with this Memorandum of Understanding. Nothing contained in this Memorandum of Understanding shall be utilized under any circumstances as evidence by either the State or the Tribe as to the intent of the procedures or effect of any provision of the Procedures or of any State or Federal law or regulation.** Because of the Hold Harmless Agreement filed December 30, 2002 with the United States District Court, giving the 535 members of the U.S. Congress a life line to continue to function under the Separations of Powers Act, of the U.S. Constitution. Herschel Collins has become legal to operate Class III gaming in the State of Connecticut and U.S. Territory. As of December 30, 2002 the State of Connecticut has not legally been able to collect the $ 30 million dollars a month from the two illegally operated Indian Casinos. Governor Jodi Rell was notified officially July 11, 2005 to notify the two tribes the U.S. Government and Herschel Collins would be contacting them to arrange new collection procedures. As of August 31, 2005 the State of Connecticut has collected another $30 million dollars from the two Indian Casinos, addressed in the Hold Harmless Agreement present to the U.S. Congress, by way of the Speaker of the House of Representatives and Senate Majority Leader Frist. Please advise me of our rights under this agreement.

The U.S. Interior Department, National Indian Gaming Commission has refused to speak with me about the Indian Casino accounts, this is illegal gaming money ear marked for the U.S. government, less whistle blowing fees. Mr. Chong and the Chairman act like they do not work for the U.S. Government; they are on the two Indian Tribes payroll, along with Arthur Anderson Accounting firm. This agency has been in Federal Court before Judge Lamberton for Nine years on the Individual Indian Management Accounts, where over $300 million dollars are missing. I do not want the over $ 86 Billion Dollars I have found for the use of the U.S. Government being in the hands of Arthur Anderson, the same person that cost Enron to go out of business.

Sincerely,

Herschel Collins, Team Leader for Pres. Bush
35 Jeffery Alan Dr.
Manchester, Ct. 06040
860-995-8131
August 31, 2005

## Memorandum of Understanding

This joint memorandum of understanding is entered into by and between the State of Connecticut [the "State"] and the Mashantucket Pequot Tribe [the "Tribe"], this 13th day of January, 1993, to set forth certain matters regarding implementation of the final Mashantucket Pequot Gaming Procedures, 56 Fed.Reg. 24996 (May 31, 1991) [the "Procedures."] All terms used herein which are defined in the Procedures shall have the meanings assigned thereto in the Procedures.

1. In full settlement and satisfaction of certain controversies which have arisen between the parties hereto concerning the effect of the Procedures on the operation of electronic lottery devices and other video facsimiles (as defined in the Procedures,) the State and the Tribe agree that, subject to all of the terms and conditions herein, the moratorium imposed by section 15(a) of the Procedures on the operation by the Tribe of video facsimile games shall be suspended and, so long as the Tribe complies with the terms and conditions of this Memorandum of Understanding, the Tribe may operate video facsimiles ("video facsimiles") as defined in section 2(cc) of the Procedures, subject to the requirements of section 7(c) of the Procedures and the Technical Standards for Video Facsimile Games as set forth in section 31 of Appendix A of the Procedures. The Tribe agrees

*START HERE*
*Clayton / thomas*

that, so long as no change in State law is enacted to permit the operation of video facsimiles by any other person and no other person within the State lawfully operates video facsimiles, the Tribe will contribute to the State a sum [the "Contribution"] equal to twenty-five per cent (25%) of gross operating revenues of such games operated by the Tribe. For purposes of this paragraph, gross operating revenues shall be defined to mean the total sum wagered less amounts paid out as prizes. The Contribution shall be payable on or before the fifteenth day of each month in an amount equal to: (i) twenty-five per cent (25%) of the gross operating revenues of the Tribe from the operation of video facsimiles during the portion of the fiscal year of the State concluding on the last day of the preceding calendar month, or, on July 15th of each year, twenty-five per cent (25%) of the gross operating revenues of the Tribe from the operation of video facsimiles during the preceding fiscal year of the State, less (ii) the cumulative Contribution paid by the Tribe prior to such date with respect to the operation of video facsimiles during the applicable fiscal year of the State, including any Minimum Contribution paid by the Tribe pursuant to paragraph (2) below. The Tribe shall provide the State with detailed reporting of the gross operating revenues of video facsimile devices and the determination of the Contribution hereunder which shall be subject to audit by the State in accordance with the provisions of the Procedures. Upon any failure by the Tribe to satisfy its obligations to the State hereunder,

-2-

not constitute an admission or concession by either the State
or the Tribe as to any legal or factual question which might
otherwise arise pursuant to section 15(a) of the Procedures.
The Tribe agrees that so long as no change in State law is
enacted to permit the operation of video facsimiles by any
other person and no other person within the State lawfully
operates video facsimile games, the Tribe shall not assert the
right to operate such devices except in accordance with this
Memorandum of Understanding.  In the event that any change in
State law is enacted to permit the operation of video
facsimiles by any other person or any other person within the
State lawfully operates video facsimile games, the Tribe shall
not be bound by the provisions of this Memorandum of
Understanding so long as it does not claim any right to
operate video facsimile games by virtue of this Memorandum of
Understanding, but the Tribe may thereupon assert any rights
which it may otherwise have under the Procedures; provided,
however, that in such event neither party shall be bound by
any of the provisions hereof nor shall either party be barred
from taking any position inconsistent with this Memorandum of
Understanding.  Nothing contained in this Memorandum of
Understanding shall be utilized under any circumstances as
evidence by either the State or the Tribe as to the intent of
the Procedures or the effect of any provision of the
Procedures or of any State or Federal law or regulation.

STATE OF CONNECTICUT, by:       MASHANTUCKET PEQUOT TRIBE, by:

6137m