UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

JUL 1 7 2006

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| HERSCHEL COLLINS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. Action No. 05-2142 (RJL) |
| | ) |
| DEPARTMENT OF INTERIOR, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**
(July **17**, 2006) [#4, 8, 9, 21]

Currently before the Court is a motion to dismiss plaintiff's Complaint filed on behalf of the Connecticut Division of Special Revenue and Connecticut Attorney General Richard Blumenthal ("defendants" or "Connecticut defendants"). Upon consideration of the parties' submissions and the entire record herein, defendants' Motion is GRANTED.

**BACKGROUND**

On November 2, 2005, plaintiff Herschel Collins, proceeding *pro se*,[1] brought this action against the United States Department of Interior, the Bureau of Indian Affairs, the National Indian Gaming Commission, the United States Department of Justice,[2] Connecticut Attorney General Richard Blumenthal, the Connecticut Division of Special Revenue, the

---

[1]     On June 21, 2006, attorney Lloyd David Iglehart entered his appearance on plaintiff's behalf. At that time, the Connecticut defendants' Motion to Dismiss had already been fully briefed.

[2]     On January 25, 2006, plaintiff moved to voluntarily withdraw his Complaint against federal defendants, the United States Department of Interior, the Bureau of Indian Affairs, the National Indian Gaming Commission, and the United States Department of Justice. The plaintiff's motion was granted on June 14, 2006, and, accordingly, plaintiff's Complaint is no longer pending against those defendants.

Mashantucket Pequot Tribe, and the Mohegan Tribal Nation[3] seeking the enforcement and "sealing" of what he refers to throughout his pleadings as a "Hold Harmless Agreement" between himself and the "535 members of the U.S. Congress." (Compl. at 2.) This alleged agreement, which plaintiff attaches to his Complaint in several iterations,[4] is signed by no one other than plaintiff and references a case previously filed by plaintiff and dismissed as incomprehensible by the federal district court in Connecticut. *See Collins, et al. v. Ford Motor Credit Co., et al.*, No. 01-2060, Dkt. No. 178 (D. Conn. Feb. 24, 2003). Despite this, plaintiff claims that the agreement was "served on The Speaker of the House, Majority Leader of the Senate, and U.S. Attorney General on July 11, 2005 and was verbally accepted." (Compl. at 2 (capitalization in original).)

In his Complaint, plaintiff alleges that the "Memorandum of Understanding" between

---

[3]     The Manshantucket Pequot Tribe and Mohegan Tribal Nation have yet to be properly served in this matter. Pursuant to the Order corresponding to this Memorandum Opinion—and in light of this Court's June 15, 2006 Minute Order, denying plaintiff's Motion for Default Judgment against the Indian tribes and stating that "[t]he Court must receive proof of legally adequate service as to defendants MASHANTUCKET PEQUOT and MOHEGAN TRIBAL NATION before default can be considered/entered"—plaintiff will have ten days in which to provide the Court with proof of legally adequate service as to the two named Indian tribes. Failure to provide such proof will result in the dismissal of this action in its entirety. Service upon the United States Attorney's Office for the District of Columbia is not acceptable.

[4]     What appears to be the primary version of the "Hold Harmless Agreement" is attached to plaintiff's Complaint as a pleading captioned, *Herschel Collins, et al. Georgia Jackson v. Ford Motor Credit, et al.*, Docket No. 3:01CV2060 (AVC), dated December 29, 2002. As with the other versions of the agreement, it is signed only by the plaintiff and contains no indication that it was accepted by any court as part of the settlement agreement referred to in its text. A review of the public docket in *Collins, et al. v. Ford Motor Credit Co., et al.*, No. 01-2060 (D. Conn. filed Nov. 5, 2001), confirms that, while plaintiff's "Hold Harmless Agreement" was in fact filed with the United States District Court for the District of Connecticut on December 30, 2002, it was never given effect by the parties or Judge Covello in that action. To the extent that plaintiff claims that the "Hold Harmless Agreement" is essentially a settlement agreement arising out of prior litigation, the proper way to challenge a violation of a settlement agreement is through a motion to enforce or a contempt or breach of contract proceeding in the court in which the settlement agreement was consummated. (*See* Defs.' Mot. Dismiss at 5 (citing *Klein v. Zavares*, 80 F.3d 432, 435 (10th Cir. 1996)).)

the State of Connecticut and the Mashantucket Pequot Tribe, which permits the tribe to

operate a Class III gaming facility on state territory, violates the Johnson Act, 15 U.S.C. §§

1171-78, and is illegal under Connecticut law.[5] (Compl. at 2.) Plaintiff appears to claim that

because he brought the alleged illegality of the tribes' casinos to the attention of the

government[6]—yet has agreed to hold Congress "harmless" for its complacency or

involvement in the approval of the "Memorandum of Understanding"—the "Hold Harmless

Agreement" entitles him to "whistle blowing fees of 40% of the Illegally Gained profits of

the two Indian Casinos" ("Hold Harmless Agreement" at 1 (capitalization in original); *see*

*also* Compl. at 3), a "[r]eward for settling, Federal Gaming License Issued by the Executive

Branch of the Government on behalf of the U.S. Congress" (Compl. at 3 (capitalization in

original)), and "[r]emoval of any jail history in the State of Connecticut" (*Id.*).

Now before the Court is defendants' Motion to Dismiss for lack of subject matter

jurisdiction and failure to state a claim upon which relief can be granted. For the following

reasons, defendants' Motion is GRANTED.

---

[5]      While plaintiff's Complaint only specifically references a "Memorandum of
Understanding" between the State of Connecticut and the Mashantucket Pequot Tribe, it also
includes general allegations regarding the "illegal" gaming activities of the Mohegan Tribal Nation.

[6]      To the extent that plaintiff's Complaint can be read as challenging the legality of
Indian casinos under the Johnson Act, 15 U.S.C. §§ 1171-78—thus facially raising a federal question
for jurisdictional purposes—this claim must be rejected. While the Johnson Act does prohibit the
possession or use of "gambling devices," including slot machines, generally within the United States
and its territories, it is the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701 *et seq.*, that
governs gambling activity and the use of gambling devices on Indian lands. In that regard, federally-
recognized Indian tribes are able to operate casinos in the State of Connecticut pursuant to the
mechanisms prescribed by the IGRA. *See* 25 U.S.C. § 2710. This narrow authorization does not
violate the Equal Protection rights of plaintiff as a non-Indian citizen. *See Artichoke Joe's v. Norton*,
353 F.3d 712, 736 (9th Cir. 2003), *cert. denied*, 543 U.S. 815 (2004). Thus, plaintiff's Complaint
and the entirety of the alleged "Hold Harmless Agreement" are based on an erroneous and misguided
interpretation of the law.

## ANALYSIS

I.    *Standard of Review*

Defendants move to dismiss plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a complaint must be dismissed for lack of subject matter jurisdiction if the action:  (1) does not arise under the federal Constitution, law, or treaties, or fall within one of the other enumerated categories of Article III, Section 2 of the United States Constitution; (2) is not a case or controversy within the meaning of that Section; or (3) the cause is not one described by any jurisdictional statute. *Baker v. Carr*, 369 U.S. 186, 198 (1962).

Finally, Federal Rule of Civil Procedure 12(b)(6) provides that a district court should dismiss a complaint for failure to state a claim upon which relief can be granted when it is clear that no relief could result under any facts consistent with the complaint's allegations. *Conley v. Gibson*, 355 U.S. 41, 45-47 (1957); *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). Thus, in evaluating defendants' Motion, the Court will assume the truth of all of the factual allegations set forth in plaintiff's Complaint, *Doe v. United States Dep't of Justice*, 753 F.2d 1092, 1102 (D.C. Cir. 1985), and will construe the complaint liberally in favor of the plaintiff, *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979).

II.    *Subject Matter Jurisdiction*

    A.    *Sovereign Immunity*

The United States Supreme Court has clearly held that the doctrine of sovereign

4

immunity – embodied in the Eleventh Amendment to the United States Constitution – is a constitutional limitation on the federal judicial power established in Article III, Section 2, in actions brought by a citizen against his own state. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). Specifically, the doctrine of sovereign immunity bars state agencies and state officials from being sued in their official capacities for monetary damages. *Keenan v. Wash. Metro. Area Transit Auth.*, 643 F. Supp. 324, 328 (D.D.C. 1986) (citing *Ford Motor Co. v. Dep't of Treasury of Ind.*, 323 U.S. 459, 464 (1945) (holding that "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants")). While a state may waive its sovereign immunity through an unequivocally expressed consent to suit, *see Pennhurst*, 465 U.S. at 99, plaintiff alleges no such waiver and cites no statute through which the State of Connecticut may have waived its immunity. Accordingly, to the extent that plaintiff demands relief from the State of Connecticut and/or its officials in the form of a monetary award/damages,[7] that aspect of his Complaint must be and is hereby dismissed.[8]

III.    *Failure to State a Claim*

In addition to seeking a monetary award in the form of "whistle blowing fees,"

---

[7]    Although not clear from the "Hold Harmless Agreement" itself, read strictly, plaintiff's Complaint states that the whistle-blowing fees to which he is allegedly entitled are to come "from the two Illegal Indian Casinos, operating illegal gambling in the State of Connecticut in violation of the Johnson Act." (Compl. at 3 (capitalization in original).) To the extent that this is the case, the State of Connecticut is not implicated by this aspect of the agreement, and any demand for whistle-blowing fees can be dismissed against the State for that reason alone.

[8]    Derivative of plaintiff's whistle-blowing fees claim is his request for inspection of the "Indian Casino books" of the Foxwood and Mohegan Sun Casinos. (Compl. at 3.) Plaintiff claims that this is necessary to "determine[, *inter alia*,] how much Herschel Collins is to collect for [his] whistle blowing fees." (*Id.*) Because the Court has not granted plaintiff's whistle-blowing fees claim, his request for inspection is moot.

plaintiff asks this Court to enforce the provisions of the "Hold Harmless Agreement" that

entitle him to (1) a reward for settling in the form of a federal gaming license issued by the

executive branch of the government on behalf of the U.S. Congress and (2) removal of any

jail history in the State of Connecticut. (Compl. at 2-4.) For the following reasons, such

claims are patently meritless.

First, assuming *arguendo* that the "Hold Harmless Agreement" was verbally accepted

by the Speaker of the House, Majority Leader of the Senate, and the U.S. Attorney General

on July 11, 2005, as plaintiff alleges (Compl. at 2), *and* assuming further that the terms of

the Agreement are somehow enforceable in this Court, the Connecticut defendants are *not*

even parties to the Agreement. Second, even if the Connecticut defendants were parties to

the "Hold Harmless Agreement," they would not be the proper parties against which to seek

enforcement since the plain terms of the Agreement make clear that such a license would be

"from the United States Government," not Connecticut. ("Hold Harmless Agreement" at 1;

*see also* Compl. at 3 (demanding, *inter alia*, a "Federal Gaming Licence Issued by the

Executive Branch of Government" (capitalization in original)).) Additionally, with regard

to the expungement of plaintiff's jail history in the State of Connecticut, assuming everything

that plaintiff claims is true—as this Court must at a motion to dismiss stage—the Connecticut

defendants are powerless to grant plaintiff the relief he requests. Connecticut prison records

are under the jurisdiction and control of the Connecticut Department of Corrections, *see*

Conn. Gen. Stat. § 18-81, which plaintiff has failed to name as a party in this matter.[9] Thus,

---

[9]    Even if the Connecticut Department of Corrections were a named party in this action, plaintiff's claim(s) against it would fail. As with the Connecticut defendants, the Connecticut Department of Corrections is (1) not alleged to be a party to the "Hold Harmless Agreement" and (2) not under the federal government's control. Because doing so would—in this Court's estimation—be futile, the Court need not and will not permit plaintiff to amend his Complaint to

6

this claim must similarly fail.[10]

## CONCLUSION

For all of the foregoing reasons, defendants' Motion to Dismiss is GRANTED in its

entirety.  An appropriate Order will issue with this Memorandum Opinion.


RICHARD J. LEON
United States District Judge

---

include the Connecticut Department of Corrections as a defendant in this action.

[10]     Plaintiff's own internally-contradictory response to defendants' Motion to Dismiss belies their role as defendants in this case.  As stated by plaintiff: "[T]his case is not about the State of Connecticut . . . . If this case was about the State of Connecticut[,] a claim would have been made against it and monetary damages would be requested." (Pl.'s Mot. to Deny Defs. Conn. Att'y Gen. & Conn. Div. of Special Revenue's Mot. Dismiss Pl.'s Compl. at 1, 2.)  In fact, plaintiff claims that he "has only made the State of Connecticut a part of this complaint for the court to order the State of Connecticut to turn over the illegal payments collected from the Indian Casinos since July 11, 2005." (*Id.* at 2.)  Regardless of plaintiff's intentions in naming the Connecticut Attorney General and the Connecticut Division of Special Revenue as defendants in this matter, as discussed above, his Complaint cannot stand.

7