Elizabeth Herm
D.C. Bar Association
Office of Bar Counsel
202-638-0862


RE: Report your office Sent To Investigators
of Roncari Industrie's (Melvin M. Burton Jr. ESQ)


Dear Ms. Herman;

In Reference To your Inquirey + Investigation
you State Melvin M. Burton, Jr. was Disbarred
As An Attorney In 1984. I Have been Requested
By Your office To Respond To your In Quirey.

(1) I did meet with Melvin M. Burton March 2006
To Discuss Representation As our Attorney In the
U.S. District Court, for the D.C. District.

(2) Melvin M. Burton Contacted me About Being
Our Attorney of Record,    I Gave them $15,000
Retainer, I Asked would He Take a percentage
of Settlement, He Said no.

(3) I Had Ray Roncari, Speak To Melvin M. Burton
About Being our Attorney. Ray Roncari Sent a
Check To Melvin M. Burton, Jr. In the Amount
of $15,500 By mail To Melvin M. Burton, made
Payable To Claude Roxborough, ESQ. I Have not
Heard From. Ray Roncari Since this Investigation

I Immagine my Associate & Ray Romacari think I was Hoodwink them with the Retainer pay made To Melvin M. Burton, Jr. Made payable To Attorney Claude Roxborough. Attorney Roxborough After Recieving the $15,500 Check on Behalf of Attorney Melvin M. Burton, Jr. Attorney Melvin M. Burton, Introduced me To Attorney Lloyd Iglehant who I Sign a Agreement To Represent me on Collins V. U.S. Dept of Interior. Attorney Melvin M. Burton, Jr. And Claude Roxborough Attorney Are still In possession of my $15,000. And Have not Returned Said Retainer Back To Herschel Collins or Attorney Iglehant.

Respectfully Submitted


Herschel Collins, Prose
Herschel Collins, Prose
Plantiff
PMB-161
1131-0 Tolland Turnpike
Manchester, CT. 06042
860-292-6417
July 29, 2006

JKR:FDH:GTW:glw
159-14-27

Washington, D.C. 20530

Fun City (Development-V.V.C.C., Inc.)
170 Harold St.
Hartford, CT 06112

February 19, 1999

Attention:  Mr. Herschel L. Collins

Dear  Sir:

This is to confirm your registration for the remainder of the Calendar Year 1999 under the Gambling Devices Act of 1962 (15 U.S.C. 1171-1178).  This letter is not a license, and registration under the Gambling Devices Act of 1962 does not authorize any act that is not in accord with federal, state or local law.

As you may know, this registration must be renewed by resupplying us with all of the information required by the Act in each Calendar Year.   Your letter should not be sent to us prior to November 30 of the preceding year in which your registration is effective. Since registration is effective on the date the full and correct information is received by the Department we suggest that your letter be sent registered or certified mail to provide you with proof of the date the letter was received.

Sincerely,

James K. Robinson
Assistant Attorney General

BY: *Frederick E. Hess*

Frederick D. Hess, Director
Office of Enforcement Operations
Criminal Division

*Presidence*
*Case*
*Atty Iglehart*
*Hold Harmless*
*Clinton Used During*
*Impeachment*

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DEC 10 1996

JAMES R. LARSEN, CLERK

_____ DEPUTY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,

    Plaintiff,

    vs.

1020 ELECTRONIC GAMBLING MACHINES,

    Defendant.

NO. CS-98-265-FVS

ORDER GRANTING FORFEITURE

**THIS MATTER** came before the Court based upon cross motions for summary judgment. The United States was represented by Assistant United States Attorneys James R. Shively and Thomas O. Rice. The Spokane Tribe of Indians was represented by Scott D. Crowell and David R. Lundgren.

I.

The Spokane Tribe of Indians ("Tribe") is operating 1020 electronic gambling machines on its reservation. The United States seeks the machines' forfeiture under the Johnson Act, 15 U.S.C. §§ 1171-1178. The Tribe has filed a claim to the machines, see Rule C(6), Supplemental Rules for Certain Admiralty and Maritime Claims, 28 U.S.C., and opposes the

ORDER - 1

government's request for forfeiture. The Court has jurisdiction by virtue of 28 U.S.C. §§ 1345 and 1355.

II.

The Johnson Act prohibits the possession of gambling devices within Indian country. 15 U.S.C. § 1175(a).[1] Gambling devices possessed in violation of § 1175(a) are subject to forfeiture. 15 U.S.C. § 1177. Forfeiture actions brought under the Johnson Act are governed by "customs laws." Id. Consequently, the parties' burdens in this action are derived from 19 U.S.C. § 1615. United States v. 129,727.00 U.S. Currency, 129 F.3d 486, 492 (9th Cir.1997), cert. denied, ___ U.S. ___, 118 S.Ct. 1399, 140 L.Ed.2d 657 (1998). Under 19 U.S.C. § 1615, the United States must first demonstrate probable cause to believe the defendant machines are being possessed or used in violation of 15 U.S.C. § 1175(a). See id. If the United States does so, the burden shifts to the Tribe to demonstrate that the machines are not forfeitable. See id.

The Tribe concedes the defendant machines are gambling

---

[1] Subsection (a) provides in its entirety:

It shall be unlawful to manufacture, recondition, repair, sell, transport, possess, or use any gambling device in the District of Columbia, in any possession of the United States, within Indian country as defined in section 1151 of Title 18 or within the special maritime and territorial jurisdiction of the United States as defined in section 7 of Title 18, including on a vessel documented under chapter 121 of Title 46 or documented under the laws of a foreign country.

ORDER - 2

devices as defined by 15 U.S.C. § 1171. (Stipulation of August 3, 1998 at 2-3.) The Tribe further concedes the machines are being possessed and used within Indian Country. Id. The Tribe's concession is sufficient to establish probable cause. Thus, the burden shifts to the Tribe to explain why the machines should not be forfeited. 19 U.S.C. § 1615.

### III.

Since, according to the Tribe, the Johnson Act does not preclude states from possessing or using gambling devices, Indian tribes should be excluded as well. As authority, the Tribe cites Reich v. Great Lakes Indian Fish and Wildlife Commission, 4 F.3d 490 (7th Cir.1993) (hereinafter "Great Lakes"). In that case, the question was whether a section of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, that limits the circumstances in which state and local governments must pay overtime to their law enforcement officers applies to Indian tribes even though the FLSA does not mention tribes. Id. at 493. Finding no good reason to deny Indian tribes the benefit of the exception, and concluding that considerations of comity and respect for tribal sovereignty weighed in favor of extending the exception to tribes, the Seventh Circuit did just that. Id. at 494-95.

The Tribe's reliance upon Great Lakes is misplaced. In order for the Seventh Circuit's rationale to apply, § 1175(a) would have to allow states, but not Indian tribes, to operate

ORDER - 3

*Presidence Court*
*Case*
*Atty Iglehart*
*Hold Harmless*
*Clinton used During*
*Impeachment*

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DEC 10 1996

JAMES R. LARSEN, CLERK

_____ DEPUTY

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    vs.<br><br>1020 ELECTRONIC GAMBLING MACHINES,<br><br>    Defendant. | NO. CS-98-265-FVS<br><br>ORDER GRANTING FORFEITURE |

**THIS MATTER** came before the Court based upon cross motions for summary judgment. The United States was represented by Assistant United States Attorneys James R. Shively and Thomas O. Rice. The Spokane Tribe of Indians was represented by Scott D. Crowell and David R. Lundgren.

### I.

The Spokane Tribe of Indians ("Tribe") is operating 1020 electronic gambling machines on its reservation. The United States seeks the machines' forfeiture under the Johnson Act, 15 U.S.C. §§ 1171-1178. The Tribe has filed a claim to the machines, see Rule C(6), Supplemental Rules for Certain Admiralty and Maritime Claims, 28 U.S.C., and opposes the

ORDER - 1

government's request for forfeiture.  The Court has jurisdiction by virtue of 28 U.S.C. §§ 1345 and 1355.

## II.

The Johnson Act prohibits the possession of gambling devices within Indian country.  15 U.S.C. § 1175(a).[i]  Gambling devices possessed in violation of § 1175(a) are subject to forfeiture.  15 U.S.C. § 1177.  Forfeiture actions brought under the Johnson Act are governed by "customs laws."  Id. Consequently, the parties' burdens in this action are derived from 19 U.S.C. § 1615.  United States v. 129,727.00 U.S. Currency, 129 F.3d 486, 492 (9th Cir.1997), cert. denied, ___ U.S. ___, 118 S.Ct. 1399, 140 L.Ed.2d 657 (1998).  Under 19 U.S.C. § 1615, the United States must first demonstrate probable cause to believe the defendant machines are being possessed or used in violation of 15 U.S.C. § 1175(a).  See id. If the United States does so, the burden shifts to the Tribe to demonstrate that the machines are not forfeitable.  See id.

The Tribe concedes the defendant machines are gambling

---

[i]Subsection (a) provides in its entirety:

It shall be unlawful to manufacture, recondition, repair, sell, transport, possess, or use any gambling device in the District of Columbia, in any possession of the United States, within Indian country as defined in section 1151 of Title 18 or within the special maritime and territorial jurisdiction of the United States as defined in section 7 of Title 18, including on a vessel documented under chapter 121 of Title 46 or documented under the laws of a foreign country.

ORDER - 2

devices as defined by 15 U.S.C. § 1171.  (Stipulation of August 3, 1998 at 2-3.)  The Tribe further concedes the machines are being possessed and used within Indian Country.  Id.  The Tribe's concession is sufficient to establish probable cause. Thus, the burden shifts to the Tribe to explain why the machines should not be forfeited.  19 U.S.C. § 1615.

### III.

Since, according to the Tribe, the Johnson Act does not preclude states from possessing or using gambling devices, Indian tribes should be excluded as well.  As authority, the Tribe cites Reich v. Great Lakes Indian Fish and Wildlife Commission, 4 F.3d 490 (7th Cir.1993) (hereinafter "Great Lakes").  In that case, the question was whether a section of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, that limits the circumstances in which state and local governments must pay overtime to their law enforcement officers applies to Indian tribes even though the FLSA does not mention tribes.  Id. at 493.  Finding no good reason to deny Indian tribes the benefit of the exception, and concluding that considerations of comity and respect for tribal sovereignty weighed in favor of extending the exception to tribes, the Seventh Circuit did just that.  Id. at 494-95.

The Tribe's reliance upon Great Lakes is misplaced.  In order for the Seventh Circuit's rationale to apply, § 1175(a) would have to allow states, but not Indian tribes, to operate

ORDER - 3

gambling devices within "Indian Country." Nothing could be further from the truth. Section 1175(a) makes no distinction between tribes and states with respect to the operation of gambling devices on Indian reservations. As a result, the Seventh Circuit's decision offers little guidance here.

Next, the Tribe argues that § 1175(a) does not prevent Indian tribes from possessing or using gambling devices. The Tribe notes that state regulation of gaming on Indian reservations implicates tribal sovereignty. See California v. Cabazon Band of Mission Indians, 480 U.S. 202, 218-22, 107 S.Ct. 1083, 1093-95, 94 L.Ed.2d 244 (1987). Since, as a general rule, tribal sovereignty may not be infringed absent an unmistakable expression of Congressional intent, see Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58-59, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978), and since § 1175(a) does not mention Indian tribes, the Tribe submits it is not governed by § 1175(a).

The Tribe is mistaken. Section 1175 clearly governs gaming on Indian reservations. See, e.g., United States v. Farris, 624 F.2d 890, 898 (9th Cir.1980), cert. denied, 449 U.S. 1111, 101 S.Ct. 919, 66 L.Ed.2d 839 (1981). Moreover, the sweeping language of § 1175(a) is an unmistakable indication Congress intended to divest all persons -- including Indian tribes -- of the authority to operate gambling devices within

ORDER - 4

Indian country.[2]  Consequently, the fact Indian tribes are not mentioned in § 1175(a) is of no significance.  See Donovan v. Coeur d'Alene Tribal Farm, 751 F.2d 1113, 1115-16 (9th Cir.1985).

That conclusion is supported by the text of the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. s 2701 et seq.  IGRA divides games of chance into three classes.  United States v. Spokane Tribe of Indians, 139 F.3d 1297, 1299 (9th Cir.1998) ("Spokane Tribe").  The defendant machines are used for Class III gaming.  As the United States points out, IGRA creates a conditional exemption for class III gaming:

> The provisions of section 1175 of Title 15 shall not apply to any [class III] gaming conducted under a Tribal-State compact that --
> (A) is entered into . . . by a State in which gambling devices are legal, and
> (B) is in effect.

25 U.S.C. § 2710(d)(6).  The fact Congress created a conditional exception for class III gaming indicates that Congress intends such gaming and its sponsors to remain subject to § 1175(a) until the relevant conditions are satisfied.

For the defendant machines to be exempt from § 1175(a), the Tribe must have a compact with the State of Washington.  25 U.S.C. § 2710(d)(6).  The Tribe freely concedes it does not.  Thus, the defendant machines are subject to § 1175(a).  See

---

[2]Nothing in 15 U.S.C. § 1175(a) limits its application to individuals.

ORDER - 5

_Crow Tribe of Indians v. Racicot_, 87 F.3d 1039, 1046 (9th Cir.1996) (where an Indian tribe operated slot machines that were not permitted by its IGRA compact with the State of Montana, "the Johnson Act [was] applicable and the use of slot machines [was] illegal").

## IV.

Nonetheless, the Tribe objects to forfeiture, alleging that the State of Washington has refused to negotiate in good faith.  Since the Tribe cannot bring an action in federal court to compel the State to negotiate, _Spokane Tribe_, 139 F.3d at 1299, the Tribe argues that the Attorney General has a duty to bring an action against the State on its behalf, or that the Secretary of the Interior has a duty to promulgate regulations adjudicating its rights under IGRA.

The United States "owes a fiduciary obligation to all Indian tribes as a class." _Inter Tribal Council of Arizona v. Babbitt_, 51 F.3d 199, 203 (1995).  More specific fiduciary duties may arise when the United States manages Indian resources.  _See id._  For example, in _United States v. Mitchell_, 463 U.S. 206, 210, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983), the Supreme Court noted that the Secretary of the Interior had assumed a "pervasive role" in the sale of timber grown on the Quinault Reservation in western Washington.  _Id._ at 219, 103 S.Ct. at 2969.  The Secretary's role was spelled out in detail in timber management statutes and the regulations promulgated

ORDER - 6

thereunder. <u>Id.</u> 219-223, 103 S.Ct. at 2969-71. Those statutes and regulations, the Supreme Court said, "clearly [gave] the Federal Government full responsibility to manage Indian resources and land for the benefit of the Indians. They thereby establish[ed] a fiduciary relationship and define[d] the contours of the United States' fiduciary responsibilities." <u>Id.</u> at 224, 103 S.Ct. at 2971-72.[3]

The Tribe argues that specific fiduciary duties may be imposed upon the United States based upon the roles assigned to the National Indian Gaming Commission, 25 U.S.C. § 2704, and the Secretary of the Interior. Neither contention can be sustained.

The Commission does have significant powers. 25 U.S.C. § 2706. However, the authority it exercises is regulatory in nature, not managerial. Furthermore, it regulates class II gaming, whereas this case involves class III gaming. As a result, there is no basis for imposing specific trust duties upon the United States due to the Commission's role in Indian gaming.

Evaluating the role assigned to the Secretary of the Interior is more complicated because IGRA has been altered by the Supreme Court. <u>Seminole Tribe of Florida v. Florida</u>, 517

_____

[3]There is no reason to limit <u>Mitchell</u> to damage claims. <u>See</u>, <u>e.g.</u>, <u>Shoshone-Bannock Tribes v. Reno</u>, 56 F.3d 1476, 1482-83 (D.C.Cir.1995) (applying <u>Mitchell</u> to a tribe's request that the Attorney General bring an action on its behalf).

ORDER - 7

U.S. 44, ___, 116 S.Ct. 1114, 1133, 134 L.Ed.2d 252 (1996) (Congress violated the Eleventh Amendment by including a clause abrogating the states' immunity from suit in federal court). However, even before Seminole, the Secretary was not responsible for negotiating Tribal-State compacts. That was the task of tribes and states. 25 U.S.C. § 2710(d)(3). Nor was the Secretary responsible for bringing failure-to-negotiate actions against states. That was the task of tribes. 25 U.S.C. § 2710(d)(7). Nor was the Secretary assigned a major role in resolving such disputes. During the pre-Seminole dispensation, federal courts were to appoint independent mediators. 25 U.S.C. § 2710(d)(7)(B)(iv). It was the mediator who evaluated competing compacts. Id. While the Secretary was responsible for promulgating those regulations necessary to implement the mediator's decision, the Secretary's discretion was limited. 25 U.S.C. § 2710(d)(7)(vii). Finally, after a compact was in place, the Secretary had no role in managing class III gaming. That was the tribe's responsibility. In the aftermath of Seminole, the Secretary's role is even less significant. As a result, there is no basis for imposing specific trust duties upon the United States due to the Secretary's role in Indian gaming. See Pueblo of Santa Ana v. Kelly, 932 F.Supp. 1248, 1298 (D.N.M.), affirmed on other grounds, 104 F.3d 1546 (10th Cir.1996). Cf. Shoshone-Bannock Tribes v. Reno, 56 F.3d 1476, 1482 (D.C.Cir.1995) ("an Indian

ORDER - 8

tribe cannot force the government to take a specific action unless a treaty, statute or agreement imposes, expressly or by implication, that duty").

That view is not unanimous of course. In <u>Chemehuevi Indian Tribe v. Wilson</u>, 987 F.Supp. 804, 808 (N.D.Cal.1997), another court concluded:

> A duty on behalf of the United States to sue the State to bring it to the bargaining table can certainly be implied from IGRA, since it appears that that is the only legal remedy available to the plaintiff Tribes to seek the benefits Congress intended them to have and to preserve the balance Congress carefully struck between the interests of the states and the tribes.

While <u>Chemehuevi</u> offers a solution to the dilemma posed by <u>Seminole</u>, the solution <u>Chemehuevi</u> offers is not without problems of its own. For one thing, while it is clear Congress intended Indian tribes to have a remedy against recalcitrant states, it is equally clear Congress did not intend the Secretary to litigate failure-to-negotiate claims. Indeed, since <u>Seminole</u>, Congress has taken steps to keep the Secretary out of the fray. Department of the Interior and Related Agencies Appropriations Act, 1998, Pub.L. 105-83, § 129(b)(1)(A), 111 Stat. 1543, 1568 ("During fiscal year 1998, the Secretary may not expend any funds made available under this Act to review or approve any initial Tribal-State compact for class III gaming entered into on or after the date of enactment of this Act."). Consequently, had Congress

ORDER - 9

anticipated <u>Seminole</u>, it is unlikely Congress would have required the Secretary to bring failure-to-negotiate claims against states.

For another thing, "[a]n agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." <u>Heckler v. Chaney</u>, 470 U.S. 821, 831, 105 S.Ct. 1649, 1655 84 L.Ed.2d 714 (1985) (citations omitted). This case illustrates the wisdom of that rule. Indian gaming raises a number of complicated issues. 25 U.S.C. § 2702. <u>Seminole</u> has not made the resolution of those issues any easier. Confronted with a difficult situation, neither the Secretary nor the Attorney General wants to bring an action against the State of Washington. Instead, the Attorney General has decided to seek forfeiture of the defendant machines. This Court is in no position to second guess that decision. <u>See Heckler</u>, 470 U.S. at 831-32, 105 S.Ct. at 1655-56 (explaining why the judiciary is ill suited to review enforcement decisions).

That leaves the Tribe's request for agency rulemaking. The Tribe insists that the Secretary may act unilaterally to prevent a state from obstructing federal legislation, <u>see Alabama v. United States Department of Interior</u>, 84 F.3d 410, 418-19 (11th Cir.1996), and that the Secretary should be required to exercise that authority in this instance. The

ORDER - 10

Tribe's suggestion is unpersuasive. One, there is no credible evidence of bad faith on the State's part.[4] Two, the Secretary has chosen not to exercise his rulemaking authority in this instance. Since he has no trust-related duty to issue regulations, his decision to refrain from doing so is not subject to review. See Heckler, 470 U.S. at 831, 105 S.Ct. at 1655.

### V.

The Tribe may not avoid forfeiture even if the Attorney General has a duty to bring a failure-to-negotiate action against the State, or the Secretary has a duty to engage is rulemaking. The purpose of a failure-to-negotiate action (and, to a lesser extent, administrative rulemaking) is to bring a state to the bargaining table. It is unclear how long negotiations would take in this case, or whether they would result in a Tribal-State compact approving the use of the defendant machines.[5] Unless and until a compact is reached,

---

[4]Recently, for example, the State reached an agreement concerning Indian gaming with twelve Washington tribes. Commission Approves Online Lottery Games For 12 Tribes, Seattle Post-Intelligencer, November 13, 1998.

[5]Two United States District Courts (this one included) have determined that the laws of the State of Washington do not permit the use of slot machines. United States v. Approximately 108 Electronic Gambling Machines, C98-5321R (W.D.Wash. Sept. 18, 1998); Washington v. The Confederated Tribes of the Chehalis Reservation, No. C-95-1805-FVS (E.D.Wash. Sept. 26, 1997). Nor are the relevant state statutes likely to change anytime soon. On two occasions, Washington voters have refused to ease state laws that

ORDER - 11

the Tribes' possession and use of the defendant machines is unlawful. 15 U.S.C. § 1175(a); 25 U.S.C. § 2710(d)(6). The Tribes are not entitled to engage in a continuing violation of the Johnson Act in the hope their behavior will be validated someday.

## VI.

The Johnson Act makes it unlawful for the Tribe to possess or use the defendant machines on its reservation. 15 U.S.C. § 1175(a). The Tribe is bound by that prohibition unless, at a minimum, its has a Tribal-State compact authorizing the use of the machines, 25 U.S.C. § 2710(d)(6), and the machines are legal in Washington. 25 U.S.C. § 2710(d)(6)(A). Since the Tribe freely concedes it does not have a compact with the State of Washington, the machines are subject to forfeiture whether or not the State permits their use. Consequently, the question of the machines' legality need not be resolved in this proceeding. The United States is entitled to custody of the machines pursuant to the stipulation of August 3, 1998.

## VII.

To summarize, the Supreme Court's <u>Seminole</u> decision makes it more difficult for Indian tribes to conduct class III gaming on their reservations. Congress is aware of that fact.

effectively restrict gaming on Indian reservations. Jim Simon, <u>Major Defeat for Gambling Measure</u>, Seattle Times, November 8, 1995; Barbara A. Serrano, <u>Bears Win One, But Tribes Lost Bet on Gambling Measure</u>, Seattle Times, November 6, 1996.

ORDER - 12

Congress may change the law if chooses to do so. Until it does, the Tribe is violating the Johnson Act by operating 1020 electronic gambling machines on its reservation. This Court is not free to ignore the violation or rewrite federal law.

**IT IS HEREBY ORDERED:**

1. The government's "Motion for Warrant of Arrest <u>in Rem</u> and Writ of Entry" (Ct. Rec. 2) is granted.

2. The government's motion for summary judgment (Ct. Rec. 13) is granted. The Tribe is to surrender the defendant machines to the United States pursuant to the terms of the stipulation of August 3, 1998.

3. The Tribe's motions to dismiss (Ct. Rec. 19) and to stay (Ct. Rec. 20) are denied.

4. All other pending motions are denied as moot.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this Order and furnish copies to counsel.

DATED this ___10th___ day of December 1998.

FRED VAN SICKLE
United States District Judge

ORDER - 13

## Memorandum of Understanding

This joint memorandum of understanding is entered into by and between the State of Connecticut [the "State"] and the Mashantucket Pequot Tribe [the "Tribe"], this 13th day of January, 1993, to set forth certain matters regarding implementation of the final Mashantucket Pequot Gaming Procedures, 56 Fed.Reg. 24996 (May 31, 1991) [the "Procedures."] All terms used herein which are defined in the Procedures shall have the meanings assigned thereto in the Procedures.

1. In full settlement and satisfaction of certain controversies which have arisen between the parties hereto concerning the effect of the Procedures on the operation of electronic lottery devices and other video facsimiles (as defined in the Procedures,) the State and the Tribe agree that, subject to all of the terms and conditions herein, the moratorium imposed by section 15(a) of the Procedures on the operation by the Tribe of video facsimile games shall be suspended and, so long as the Tribe complies with the terms and conditions of this Memorandum of Understanding, the Tribe may operate video facsimiles ("video facsimiles") as defined in section 2(cc) of the Procedures, subject to the requirements of section 7(c) of the Procedures and the Technical Standards for Video Facsimile Games as set forth in section 31 of Appendix A of the Procedures. The Tribe agrees

*START HERE*

*Clayton/Thomas*

that no change in State law is enacted to permit the operation of video facsimiles by any other person and no other person within the State lawfully operates video facsimiles, the Tribe will contribute to the State a sum [the "Contribution"] equal to twenty-five per cent (25%) of gross operating revenues of such games operated by the Tribe. For purposes of this paragraph, gross operating revenues shall be defined to mean the total sum wagered less amounts paid out as prizes. The Contribution shall be payable on or before the fifteenth day of each month in an amount equal to: (i) twenty-five per cent (25%) of the gross operating revenues of the Tribe from the operation of video facsimiles during the portion of the fiscal year of the State concluding on the last day of the preceding calendar month, or, on July 15th of each year, twenty-five per cent (25%) of the gross operating revenues of the Tribe from the operation of video facsimiles during the preceding fiscal year of the State, less (ii) the cumulative Contribution paid by the Tribe prior to such date with respect to the operation of video facsimiles during the applicable fiscal year of the State, including any Minimum Contribution paid by the Tribe pursuant to paragraph (2) below. The Tribe shall provide the State with detailed reporting of the gross operating revenues of video facsimile devices and the determination of the Contribution hereunder which shall be subject to audit by the State in accordance with the provisions of the Procedures. Upon any failure by the Tribe to satisfy its obligations to the State hereunder,

-2-

not constitute an admission or concession by either the State or the Tribe as to any legal or factual question which might otherwise arise pursuant to section 15(a) of the Procedures. The Tribe agrees that so long as no change in State law is enacted to permit the operation of video facsimiles by any other person and no other person within the State lawfully operates video facsimile games, the Tribe shall not assert the right to operate such devices except in accordance with this Memorandum of Understanding. In the event that any change in State law is enacted to permit the operation of video facsimiles by any other person or any other person within the State lawfully operates video facsimile games, the Tribe shall not be bound by the provisions of this Memorandum of Understanding so long as it does not claim any right to operate video facsimile games by virtue of this Memorandum of Understanding, but the Tribe may thereupon assert any rights which it may otherwise have under the Procedures; provided, however, that in such event neither party shall be bound by any of the provisions hereof nor shall either party be barred from taking any position inconsistent with this Memorandum of Understanding. Nothing contained in this Memorandum of Understanding shall be utilized under any circumstances as evidence by either the State or the Tribe as to the intent of the Procedures or the effect of any provision of the Procedures or of any State or Federal law or regulation.

STATE OF CONNECTICUT, by:

MASHANTUCKET PEQUOT TRIBE, by:

6137m