**PAUL W. SMITH**
ATTORNEY AT LAW
27 S. Main Street
P.O. BOX 338
WINDSOR LOCKS, CONNECTICUT 06096
(860) 627-0513
FAX (860) 623-1026
attorneypaulsmith@hotmail.com

Gwendolyn S. Bishop

August 25, 2006

VIA FACSIMILE 202-547-6895
US MAIL

Lloyd D. Iglehart
Claude W. Roxborough
Melvin M. Burton, Jr.
1717 K Street NW
Suite 600
Washington, DC 20036

RE: Raymond A. Roncari Retainer

Gentlemen:

    This office represents the family of Raymond A. Roncari. Mr. Roncari forward money to you as a retainer. The money was promptly returned to Mr Roncari, and the check has been deposited and cleared his account.

    Mr Roncari recently passed away. As far as the Roncari family, his spouse and heirs are concerned this matter is closed.

    Thank you for your prompt attention in returning the retainer.

Very truly yours,

Paul W. Smith

EXHIBIT "D"

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HERSCHEL COLLINS,      *

    Plaintiff,      *

vs.      *      Case No.: 1:05 CV 02142
                                                  Judge Richard Leon

U. S. DEPARTMENT OF      *
INTERIOR, et al.,
     *

    Defendant.

### AFFIDAVIT OF MELVIN M. BURTON, JR.

Melvin M. Burton, Jr., being first duly sworn upon oath, deposes and says:

1. That I am Melvin M. Burton, Jr., 700 – 7th Street, SW, Unit 735, Washington, DC 20024

2. That I am a political consultant and also serve as a paralegal for Attorneys in Washington, DC, who are in need of paralegal services.

3. I am currently rendering paralegal services for Attorney Claude W. Roxborough, whose office is located at 1519 Pennsylvania Avenue, SE, Washington, DC 20003.

4. On or about March 9, 2006, Mr. Rufus Stancil came to 1519 Pennsylvania Avenue, SE, where I perform paralegal services, at approximately 2:30 or 3:00 p.m. and brought with him, a person

1

who identified himself as Herschel Collins and a person who introduced herself as Mrs. Collins.

5. During the conversation with Mr. Collins, in the presence of Rufus Stancil, Mr. Collins informed me that he had filed a suit in the United States District Court, wherein he was representing himself and that he had not been able to get the Court to enter a Default Judgment against several defendants, whose time to answer had expired. That he made inquiry of Ms. Whittington, the Clerk of the Court, and the Judge's Law Clerk, concerning the entering of a default with no results and that "he wanted to speak to the Court to explain to the Judge that his suit had the backing of the President and other Federal Government officials". "That he needed someone who could, to intercede on his behalf to get an appointment with the Court".

6. I told Mr. Collins that I could not practice law, that I was working as a paralegal and I did not know anyone at the Court that could help him. At which time Mr. Collins asked me whether I could inquire around among my political friends and acquaintances to ascertain whether any of them were familiar with people at the Court and whether they would be willing to contact the Court to get an appointment for him to speak with the Court.

7. I told Mr. Collins that I did not think that any of my political friends or acquaintances would be willing to contact the Court and intercede

2

on his behalf and that a litigant cannot have contact with the Court, without the other parties being present. Notwithstanding this statement to him, he asked me if I would contact my political friends and acquaintances on his behalf.

8. After having contacted several of my political friends and acquaintances, they all declined to discuss the matter. Through a subsequent telephone conversation with Mr. Collins, I informed him that none of the persons whom I had contacted would intercede on his behalf.

9. Thereafter, as the result of a telephone call from a Mr. Raymond Roncari, of Connecticut, who had been identified by Mr. Collins as his partner, who wanted to know the status of my inquiries with my political friends and associates and who asked whether Mr. Collins would be able to speak with the Court in the case and what, if anything, could be done to get Mr. Collins before the Court. I told Mr. Roncari that none of my political friends wanted to contact the Court and that I was told that individual contact with the Court was not permitted.

10. I, told Mr. Roncari that maybe Mr. Collins could retain an attorney, who, also could probably try to get Mr. Collins before the Court, based upon the filings already made by Mr. Collins or new filings but that the other parties to the case would be present and that an

3

Attorney would probably want a retainer of $15,000.00 or more
Case 1:05-cv-02142-RJL     Document 30-5     Filed 08/30/2006     Page 5 of
since his case was in the United States District Court.

11. In a subsequent conversation with Mr. Collins, I told him that since his case was in the United States District Court that an Attorney would probably want a retainer of no less than $15,000.00.

12. As the result of another call from Mr. Roncari, Mr. Roncari asked if I could find an attorney for Mr. Collins and I told him that Attorney Roxborough, for whom I perform paralegal services would probably be interested in proceeding on behalf of Mr. Collins, in his matter with the United States District Court.

13. Mr. Roncari subsequently called me and stated that he would send a check payable to Mr. Roxborough, which was to be used to pay Mr. Roxborough or any other attorney which I could find who would be willing to represent Mr. Collins. (See Exhibit #1.)

14. Mr. Roncari sent a check, made payable to Claude W. Roxborough, in the amount of $15,500.00.

15. Attorney Lloyd D. Iglehart and Mr. Collins met, and consulted with each other and as the result thereof, Mr. Iglehart and Mr. Collins entered into a Retainer Agreement, providing for representation of Mr. Collins by Mr. Iglehart. Mr. Iglehart was asked whether he would represent Mr. Collins because of the ambiguity which arose as to whether Mr. Roxborough could engage in practice before the United States District Court.

15. I was told by Mr. Iglehart that he entered his appearance in the United States District Court on behalf of Mr. Collins and did filings with the Court, wherein he requested a status hearing which, if the Court set, would be sufficient to get Mr. Collins before the Court along with the other parties in the case.

16. Further, I am told by Mr. Iglehart that there came a time, after filings had been made with the Court that the Court dismissed two (2) Defendants in the case and that Mr. Iglehart spoke with Mr. Collins and informed him that he, Mr. Iglehart, would file a Motion to Reconsider the Dismissal; that upon informing Mr. Collins, that he, Mr. Iglehart, would file a Motion to Reconsider the Orders of Dismissal. Mr. Iglehart said that Mr. Collins informed him that he, Mr. Collins, had already filed, on his own, a Motion to Reconsider the Order of Dismissal. Mr. Iglehart stated that he informed Mr. Collins that he, Mr. Iglehart, would file a Supplemental Motion to Mr. Collins' Motion and that Mr. Collins told him not to file any documents with the Court and demanded a return of the $15,000.00.

17. Thereafter, Mr. Collins commenced to harass, harangue and threaten me concerning the return of the $15,000.00. He left numerous telephone messages on the telephone where I perform paralegal services, which were threats, threatening my life and that

5

of my family. (One of these calls is still on the telephone answering devices and the other is on my cell phone.)

18. Upon the commencement of the threatening behavior of Mr. Collins, I attempted to call Mr. Roncari to discuss the matter with him and learned from a member of his family, that Mr. Roncari, whom I had been told by Mr. Collins was ill, was terminally ill, therefore, I could not speak to him.

19. As the result of another telephone conversation to Mr. Roncari's residence, and speaking with a member of Mr. Roncari's family, I was instructed to return the $15,000.00, to Mr. Roncari and on July 27, 2006, the $15,000.00 was returned to Mr. Roncari by express mail. The Roncari family received the returned payment. (See Exhibit #2.) Thereafter, Mr. Collins continued to harass me as well as the office personnel where I work with numerous threats and made allegations to the Courts and District of Columbia Bar, which were spurious, false and a complete fabrication.

20. It appears to me that Mr. Collins, after having learned that Mr. Roncari was terminally ill and that his family would not allow anyone to speak to him, then created a scheme whereby he could obtain the $15,000.00. This is confirmed by Mr. Collins filing on his own, a Motion to Reconsider the Dismissal of the Two (2) Defendants and refusing to allow Mr. Iglehart to file a Motion or Supplemental Motion in his behalf. I am of the opinion that this

whole matter was orchestrated by Mr. Collins in order to obtain possession of the $15,000.00, which had been sent to me by Mr. Roncari, for me to get and pay an attorney to assist Mr. Collins when in fact Mr. Collins never intended to have any attorney assist him in his case before the United States District Court, wherein he had made all of the earlier filings by himself.  This scheme created by Mr. Collins was a charade to get the $15,000.00, paid by Mr. Roncari, who is now deceased.

**Further,** the affiant sayeth not.

_____
Melvin M. Burton, Jr.

**SUBSCRIBED and SWORN** to, before me, this 28th day of August 2006.

_____
Notary Public

My Commission Expires: January 31, 2008

7